1815.

MARKS
v.
PELL.

*Nov.* 14th. MARKS AND OTHERS *against* PELL, *devisee and executor of* PELL.

No length of time is a bar to a redemption of a mortgage, where there is fraud in the transaction, or where, by the agreement of the parties, at the time, the mortgagee is to enter and keep possession until he is paid out of the profits.

*Parol* evidence is admissible to show that an absolute deed was intended as a mortgage, or that the defeasance has been destroyed by fraud or mistake.

But where a bill was filed for an account and for a reconveyance, 30 years after the deed, alleged to be a mortgage, was given, during all which time the defendant had been in possession, parol evidence of the mere *confessions* of the defendant, made 17 years after the deed, that it was taken as security for a debt, was held insufficient.

*JOSEPH LATHAM*, deceased, in his lifetime, was seised of a house and lot, (No. 318 *Water-street*,) in the city of *New-York*, and on the 14th of *July*, 1806, made his will, at *Charleston*, *S. C.*, by which he gave one half of the lot to his wife, *Martha*, in fee, one fourth to his son *Gilbert*, in fee, and, if he died unmarried, then to his wife, and one fourth to his nephew, *John Latham*, and his niece, *Mary*. *Gilbert Latham* died unmarried. The widow of the testator mar-

ried *P. Simpson*, who, with the nephew and niece, are plaintiffs. The bill stated, that the testator, in 1785, being indebted to *Gilbert Pell*, in the sum of 1,500 dollars, agreed to give him a mortgage on the lot in question ; that *G. P.* prepared an absolute deed of the lot, which the testator refused to execute, and *G. Pell* agreed to execute a defeasance ; that, on the 4th of *May*, 1788, the testator executed the deed to *G. Pell*, who gave him a certificate that the deed was to operate as a mortgage to secure the payment of the 1,500 dollars, in ten years, with interest; that the testator then went abroad and continued many years, leaving all his papers with his uncle, *Gilbert Pell*, who, immediately thereafter, took possession of the lot, and of the rents and profits, and fraudulently destroyed the certificate of defeasance ; that *G. Pell* died in 1803, and by his last will devised the premises in question to the defendant, whom he made his executor ; that the rents and profits received by *G. Pell* were more than sufficient to satisfy the debt, and that a large surplus remained in the hands of the defendant. The plaintiffs prayed a discovery of the rents and profits received, and whether the debt had not been paid and satisfied ; that the defendant might account, and be decreed to reconvey the lot, &c.

The defendant, in his answer, admitted the seisin, &c. of *Joseph Latham*, and his will ; but he denied any title in the testator, since the 4th of *January*, 1785. He stated, that he did not know, nor believe, that the testator, *J. Latham*, was indebted to *G. Pell ;* that he knew nothing of any debt, except that *J. L.* executed a bond on the 4th of *January*, 1785, to *G. P.*, for 50 pounds. He denied every allegation relative to the agreement for a mortgage, and a certificate of defeasance. He admitted, that on the 4th of *January*, 1785, *G. Pell* agreed to purchase the lot for 635 pounds, and took a deed, in fee, for the premises ; that *G. Pell* was uncle of the testator, who, soon after the deed was executed, left the state, and was absent for many years ;

but denied that he left any papers with *G. P.* when he went abroad. He admitted that *G. P.* took possession of the premises, and received the rents, &c. and died in *March* or *April*, 1803, having, by his will, dated in *December*, 1798, devised the premises to the defendant, his executor, who had taken possession, &c. The defendant insisted, that the purchase by *G. P.* was for a valuable consideration, and absolute; that, if intended as a mortgage, there had been no attempt to redeem since 1785 ; that he found among the papers of his testator, the bond of *J. L.* for 50 pounds ; that he could not ascertain the amount of the rents and profits received by his testator, during his life; that the widow was entitled to one third of the rents, as her dower, which had been paid to her; that he had paid large sums for assessments, &c. and for repairs.

 *Stephen Latham*, a witness for the plaintiffs, stated, that, in *August*, 1802, he went with *Joseph Latham*, who had come to *New-York*, from the southward, to his uncle, *Gilbert Pell*, when a conversation took place between them, in which *Joseph Latham* asked *G. Pell*, if the rents of the house and lot in question had not been sufficient to satisfy the bond, and that, if they had not been sufficient, he would endeavour to discharge what was due ; that *G. P.* answered, that the bond had stood a long time, and that it was out of his power to give any account of the rents ; that *J. L.* then told him, that he had promised, when he (*J. L.*) went away, to keep an account, to charge him for repairs, and credit him with the rents ; that *G. P.* answered, that he had done so for a long time, until, at length, he got tired of it, and, being angry, he threw all the papers into the fire ; and the witness understood that the receipt, or defeasance, was one of the papers so destroyed ; but, on being asked if the deed was also destroyed, *G. P.* answered in the negative; that *J. L.* then said to *G. P.*, that he must recollect that he had given to him (*J. L.*) an imdemnifying receipt, purporting that when the bond was paid, the deed must be given up, all which, the

witness deposed, *G. P.* acknowledged, and did not con-
tradict. That *G. P.* told *J. L.*, that if he would pay
1,000 pounds, he might have the property, but refused to
render any account. The witness, also, related a conversa-
tion between *J. L.* and *G. P.*, when the former was about
going to *Carolina*, in which *G. P.* said, that as *J. L.* was
about going to a sickly place, and might die, and some per-
son might get possession of the receipt, and thereby of the
house and lot, that he had better leave the receipt with him,
*G. P.*, which *J. L.* said he would do.

Three other witnesses, examined on the part of the plain-
tiffs, testified to similar confessions and acknowledgments,
by *G. Pell*, that the premises belonged to his nephew *J.
Latham*, and that he, *G. Pell*, had taken them as security
for a debt.

· The witness to the deed of the 4th of *January*, 1785,
·was examined, who said he did not recollect any deed of de-
feasance, nor that any thing was said about it. He had some
recollection that *J. L.* was indebted to *G. P.*, and that the
deed was executed to him on that account; but a written
memorandum, signed by him the 19th of *June*, 1804, stated
that *J. L.* owed *G. P.* 600 pounds, and upwards, and that
*G. P.*, fearful of losing the debt, obtained the deed from *J.
L.*, of a house ; but whether the sale was absolute and final,
or only as security, he could not recollect. The witness
was 73 years of age, infirm, and of weak memory.

The cause was argued by *Hoffman* and *Anthon*, for the
plaintiffs ; and by *T. A. Emmet*, for the defendant.

THE CHANCELLOR. The bill is in the nature of a bill to
redeem a mortgage alleged to have been given in *January*,
1785, by *Joseph Latham* to *Gilbert Pell*. The answer
sets up an absolute purchase by a deed in fee, and denies
the existence of the mortgage. The plaintiffs undertake to
establish the charges in the bill by parol proof. This proof
consists of confessions made by *Gilbert Pell*, that the deed

in question was taken and considered by him as a mortgage; and that he kept an account of the rents and profits for a number of years, and then destroyed all those accounts, together with a certificate in the nature of a defeasance, given by him at the time of the execution of the deed.

I am of opinion that the proof is not sufficient to support the bill.

My objection is to the nature of the proof. It consists wholly of certain confessions made by *Gilbert Pell* in certain conversations. There is not a single *fact*, exclusive of those confessions, in support of the charge. *Gilbert Pell* takes a deed, in fee, of the lot in question, in *January*, 1785, and enters immediately into possession. A subscribing witness to the deed is examined, and he is the person who drew the deed. He has no recollection or knowledge of any certificate, or receipt, or other paper in the nature of a defeasance, though it was understood that *Latham* was indebted at the time to *Pell*. This deed was, as he states, freely and understandingly executed ; and it was acknowledged, in *February*, 1785, by the grantor, before a judge of the supreme court. From that time to the death of *Gilbert Pell*, in 1803, he possessed and used the property as owner, and since his death the defendant, as devisee, has also possessed and used it as owner. Here is a period of near 30 years, in which the premises in question have been enjoyed under that deed; and it would appear to me to be very dangerous to destroy that title by means of certain parol declarations alleged to have been made by *Gilbert Pell*, in his lifetime, and which no person now living has the means to contradict. I agree to the doctrine in the cases cited, that it is competent to show, by parol proof, that the deed was taken as a mortgage, and that the defeasance was destroyed by fraud or mistake ; and I agree further, that length of time is no bar to a fraud, or to redemption of a mortgage, where the mortgagee has treated it all the time as a mortgage, or where it was originally agreed that he was to enter and keep possession until he

was paid out of the profits. (1 *Vern.* 418. *Prec. in Chan.* 526. 1 *Powell on Mort.* 411. *Cases temp. Talb.* 61. 2 *Ves.* jun. 84. 1 *Day's Rep.* 139.) My difficulty is, that there is not the requisite legal proof of any of these allegations. There is not a single voucher or document in writing, nor a single fact, or act, or deed of *Gilbert Pell*, that supports the charges. The whole rests on the naked, unassisted confessions of *Pell*, made to, or in the presence of, certain witnesses, about 17 years after he had been in the peaceable occupation of the premises as apparent owner. It was once observed in the supreme court, (6 *Johns. Rep.* 21.,) that acknowledgments of the party, as to title to real property, are generally a dangerous species of evidence ; and though good to support a tenancy, or to satisfy doubts in cases of possession, they ought not to be received as evidence of title, as it would counteract the beneficial purposes of the statute of frauds. That doctrine strikes me as just and sound, and principles are essentially the same in both courts.

The evidence of the existence and destruction of the receipt, operating as a defeasance, is quite lame, even from the confessions of *Gilbert Pell.* The proof is rather negative, and proceeds more from his silence than his acknowledgment. There is another objection to the charge : these alleged confessions were made to *Joseph Latham*, in 1802 ; and yet, at the same time, *Gilbert Pell* refused to render any account, and demanded 2,500 dollars for the lot. This was inconsistent with his other confession of right and equity in *Latham.* But why did not *Latham*, then, prosecute for the land ? He could have made *Pell* disclose the truth by his answer in this court. Instead of which *Latham*, who had already abandoned the lot to *Pell* for 17 years, goes abroad, and leaves his claim dormant, and dies in 1806 ; and the claim is now, after many years, and for the first time, brought forward in this court by his representatives against the representative of *Pell.* It rests entirely on certain conversations, which are extremely liable to be misunderstood or per-

1815.    verted ; and yet are very unassailable, as they are sworn to
         under the cover of time, and the death of *Pell.*

MATTER OF
WENDELL.     It appears to me that, under all the circumstances of this
case, it would be setting a dangerous precedent, to give effect
to this stale claim, upon such uncorroborated and loose con-
fessions.

         I shall, accordingly, dismiss this bill, but without costs.

                                        Decree accordingly.