## Case No. 3,859.

DEXTER et al. v. ARNOLD et al.

[3 Summ. 152.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1837.

REDEMPTION OF MORTGAGES — LIMITATION — STATE STATUTES — ACKNOWLEDGMENT BY MORTGAGEE — PLEADINGS AS EVIDENCE — ADVERSE POSSESSION — CO-TENANTS.

1. Courts of equity follow the analogies of the law, as to the limitation of the right to redeem a mortgage.
[Cited in Badger v. Badger, Case No. 718.]

2. The statute of Rhode Island respecting the redemption of mortgages, though specially addressed to the supreme court of the state, is

proper to be followed by the circuit court of the United States, sitting in equity.

3. The general rule in equity is, that twenty years' exclusive possession by a mortgagee is a bar to the equity of redemption.
[Cited in Wyman v. Babcock, Case No. 18,-113; Amory v. Lawrence, Id. 336.]

4. Courts of equity will allow a redemption of a mortgage, under peculiar circumstances, even after a lapse of more than twenty years.

5. The acts of a mortgagee, within twenty years, admitting the title to be a mortgage, are sufficient to keep open the equity. So, also, are solemn recitals and acknowledgments of the mortgage, in deeds and other written transactions with third persons.

6. Quaere; whether parol admissions, within twenty years, are sufficient to keep open the equity.
[Cited in Hunter v. Marlboro, Case No. 6,-908.]

7. There is no instance of a decree being made upon parol evidence, in favor of the party seeking to redeem.

8. Whatever may be the true rule, the confession and admission of the mortgagee, in the present case, are too infirm to justify a decree in favor of redemption.

9. The answer of a defendant in another suit, though good evidence against him, is not admissible against a co-defendant.

10. The possession of one co-tenant is not, ordinarily, to be treated as adverse to that of other co-tenants.

Bill in equity, to redeem the one third of certain real estate, called the "Paget Farm," which the plaintiffs [Henry H. Dexter and others] sought to redeem, claiming title under the mortgagor, Jonathan Arnold. The material facts were as follows: In May, 1793, Jonathan Arnold and Aza Arnold were each seized and entitled to one third of the Paget farm, in his own right and fee simple, the other third being owned by the children of their deceased brother, Welcome Arnold. On the 6th of the same month, Jonathan Arnold mortgaged his one third, together with his one half of the stock and farming utensils thereon, to his brother Thomas Arnold, for the payment of the sum of £750, and £100, with lawful interest, on or before the first of April, 1794. Jonathan Arnold died on or about the first of October, 1806, leaving his brothers, Thomas and Aza, and his sisters, Marcy Dexter, (under whom the plaintiffs claim title), and Abigail Greene and Elizabeth Arnold, and the children of his deceased brother, Welcome Arnold, (who died in 1798), his sole heirs. It did not appear, that Thomas Arnold ever entered into possession of the mortgaged premises, until after the death of Jonathan Arnold. On the 23d of March, 1807, Thomas took administration upon Jonathan's estate; and on the 3d of June of the same year, sold to his brother Aza Arnold, for the sum of $6403 67, by an absolute deed of general warranty, the same one third of the Paget farm, which was mortgaged to him by Jonathan Arnold, the deed describing it as "the same third part of said farm which I purchased of Jonathan Arnold, by his deed of mortgage, bearing date," &c. Under this

deed, (which was immediately put on record), Aza Arnold either entered into, or remained in possession of the whole of the Paget farm, taking the rents and profits, two thirds for himself, and one third for his co-tenants, viz. the heirs of Welcome Arnold, until his death, which happened about the 3d of December, 1833. By his will, dated the 28th of June, 1830, he devised to the heirs of his brother, Thomas Arnold, (who died on the 11th of December, 1826,) and the heirs of his brother Welcome, (who died, as has been already stated, in 1798,) all his right in the Paget farm. By the same will he devised to other persons, who were his heirs at law, other portions of his estate. Marcy Dexter died on the 4th of September, 1817, and by her will devised the remainder of her estate, (including her right, viz. one sixth in the premises), in trust for the benefit of certain persons, among whom were the plaintiffs. Anna Arnold (the defendant) took administration in the estate of Thomas Arnold, in December, 1826. The defendants were all persons claiming title to the same one third of the Paget farm, under the will of Aza Arnold, or under the will of Marcy Dexter. All the defendants, also, the heirs or descendants of the heirs of Jonathan Arnold, in different degrees; and all of them, except those deriving title under Marcy Dexter, resisted redemption. The bill was filed on the 15th of September, 1835, that is to say, more than forty years after the mortgage became absolute at law, from the breach of the condition.

Mr. Snow, for plaintiffs.
Mr. Dorr, R. W. Greene, C. F. Tillinghast, and A. C. Greene, for defendants.

STORY, Circuit Justice. There is no dispute about the deraignment of title of either party; and the whole question is, whether, under the circumstances, after such a lapse of time, the plaintiffs are entitled to redeem.

The act of Rhode Island, for quieting possession (Dig. 1798, p. 465, and of 1822, pp. 363, 364), gives to a quiet seisin and possession of lands in fee simple, for twenty years, the full effect of a good and rightful title in fee, subject only to the common exceptions in favor of persons under age, femes covert, non compotes mentis, or imprisoned, or beyond seas. The act of Rhode Island, respecting mortgages (Dig. 1798, p. 275; Dig. 1822, p. 210), declares, among other things, that the equity of redemption of mortgages made prior to 1798 shall be "within twenty years after possession shall have been obtained of any mortgaged estate, by consent of parties, without legal process;" with a proviso that the supreme court of the state may "allow a redemption of any mortgaged estate after a possession of twenty years, obtained without legal process, if any peculiar circumstances shall, in the opinion of the court, render such redemption equitable." The policy of the legislature, however, manifestly is to shorten the time of redemption in ordinary cases; for, in all cases of mortgages made since 1798, and before 1822, the equity of redemption is limited to six years, after possession by process of law, or a peaceable and open entry in the presence of two witnesses; and the equity of redemption of mortgages, made since 1822, is limited to the still more restricted period of three years after such possession; without any such proviso giving the court authority, upon equitable circumstances, to open the right to redeem, after the lapse of these respective periods. In cases of mortgages courts of equity, upon general principles, follow the analogies of the law as to the limitation of the right to redeem. Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 152; Hughes v. Edwards, 9 Wheat. [22 U. S.] 489; and Cholmondeley v. Clinton, 2 Jac. & W. 1. And if there were no statute in Rhode Island, touching this particular subject, the limitation of twenty years, provided for the quieting of possessions, would furnish to this court by analogy the proper rule for limiting the equity of redemption to the same period. But I think, that the statute respecting mortgages ought to govern in this case; and though the clause, giving the state court authority to allow a redemption, after twenty years' peaceable possession under mortgages, made prior to 1798 (as the present mortgage was), is specially addressed to that court; yet it ought to govern us in the present case for two reasons: First, because it furnishes the appropriate analogy upon the known doctrine of courts of equity; and, secondly, because it is but a mere affirmation of the general principles, upon which courts of equity act in allowing or refusing a redemption. Whenever, notwithstanding a great lapse of time, peculiar circumstances render the redemption of a mortgage equitable, courts of equity have been in the habit of disregarding any formal limitation, prescribed by its own authority in the exercise of its jurisdiction on this subject. Thus, in Ord v. Smith, 2 Eq. Cas. Abr. 600, Sel. Cas. Ch. 9, a redemption was allowed, under very special circumstances, after about forty years from the time when the mortgage was made. But in the same case it was said, that the general rule should be inviolably abided by; for it is for the quiet of men's estates. Smart v. Hunt, cited in Hardy v. Reeves, 4 Ves. 479, is to the same effect, as is also Hansard v. Hardy, 18 Ves. 455. But there were, in each of these cases, circumstances of a very peculiar nature, showing that the mortgagee, within twenty years, had solemnly treated it as a mortgage, not merely by parol admissions, but by solemn acts and admissions in writing.

It appears to me, that the possession of Aza Arnold, under the deed of Thomas Arnold, must be treated as the possession of a person claiming title in fee, as absolute owner of the one third of the premises conveyed by that deed. There is no pretence,

that Aza ever kept any account of the rents and profits, or ever accounted therefor to any persons, except to the heirs of Welcome Arnold. His title was an absolute title, with covenant and warranty; and although he had notice at the time of the conveyance, that the original title of Thomas Arnold was under a mortgage; yet it by no means follows, that, he did then know or believe, that there was a subsisting, unextinguished equity of redemption at that time in Jonathan Arnold or his heirs, or that he had not in his lifetime by some act informally surrendered it to Thomas Arnold. Jonathan appears to have died abroad, and to have been abroad for some years before his decease; and I think it may fairly be inferred, from an account annexed to the answer of Aza Arnold and James Arnold, that Jonathan Arnold was indebted to Thomas in other sums than those stated in the mortgage; or, at all events, that there were other unliquidated accounts between them. Be this fact as it may, it seems to me, that at all events it may fairly be inferred, that Aza Arnold gave the full value of the one third of the farm at the time of his purchase; and that the title and covenants of general warranty were taken upon that foundation. Under such circumstances, he must be deemed to have entered into and to have held possession of the premises adversely to the title and claims of the other heirs of Jonathan Arnold. His possession was notorious and open. The deeds were all recorded. He kept no accounts, and never was called upon to account for any rents or profits by any persons claiming as heirs under Jonathan. His sister, Marcy Dexter, was then living, and did not die until 1817; yet she never made any claim whatsoever in her lifetime, nor have her devisees made any claim until the present bill was contemplated to be brought. So that here we have an uninterrupted and undisputed possession by Aza Arnold for the space of twenty-six years, and until his death, manifestly under an assertion on his part of an absolute title, and that possession acquiesced in by those, who had a known interest to contest it. It is true, that Aza Arnold might lawfully be in possession of the whole of the farm as a co-tenant, and therefore his possession might be consistent with that of the other heirs of Jonathan Arnold; for the possession of one co-tenant is not ordinarily to be treated as adverse to that of the other co-tenants. But, on the other hand, one co-tenant can oust his co-tenants, and thereby acquire an adverse possession to them; and if he is long in possession, claiming an exclusive right and title in himself, and taking the rents and profits accordingly, and that claim is notorious under a recorded deed conveying an absolute title, it affords clear and determinate evidence of a disseisin of the other co-tenants. Such I take the established rule at law to be: and it seems to me directly applicable to the circumstances of

the present case. See Prescott v. Nevers. [Case No. 11,390], and the cases there cited. I cannot but impute the acquiescence, during so long a period, of Marcy Dexter and her devisees, (for none of the other heirs of Jonathan Arnold seek any redemption,) to one of two causes; either that the equity of redemption had been in fact, though informally, extinguished, or that the mortgaged property was not worth redemption; and, therefore, the adverse possession, though known, was not deemed fit, under the circumstances, to be resisted.

But let us take the case in the most favorable view for the plaintiffs in which it can be contemplated; and that is, as a case in which Aza Arnold had full notice of the mortgage as a subsisting mortgage, with the equity of redemption attached thereto, at the time of his purchase, and, of course, that, as to the other heirs of Jonathan Arnold, he was to be treated only as a mortgagee in possession. What then would be the operation of the circumstances in a court of equity? The general rule in equity is, that twenty years' exclusive possession by a mortgagee is a bar to the equity of redemption. The exceptions are, where there have been, within that period, acts done, or solemn acknowledgments made, by the mortgagee, recognizing the title as a mere mortgage. The statute of Rhode Island, applicable to this very mortgage, prescribes the same limitation of twenty years. Are there, then, in the present case any peculiar circumstances which render a redemption equitable after the lapse of twenty-six years? No acts have been done by the supposed mortgagee, Aza Arnold, within this whole period, which recognize his title to be purely that of a mortgagee. No accounts have been kept by him as such; no written acknowledgments or transactions are shown, even with strangers, pointing to such a mortgage title. His acts, so far as they go, are all the other way. His title, so far as we can trace it from the title-deeds, is opposed to such a conditional right. It is upon its face purely absolute. Admitting that he was made by the notice, in contemplation of law, as to the other heirs of Jonathan Arnold, a mere assignee of the mortgage, it is certain, that he did not claim merely as such assignee; but his title-deed purported to convey to him an unconditional title; and under that, and not otherwise, he entered, at least as far as any clear proofs exist in the case.

Now, I am not disposed to doubt the authority of those cases, which have decided, that the acts of the mortgagee within twenty years, clearly admitting the title to be a mortgage, are sufficient to keep open the equity; such, for example, as the bringing of a bill to foreclose within the twenty years; or keeping accounts of the rents and profits under the mortgage; or receiving interest from the mortgagor on the footing of the mortgage; or devising the estate as mortgaged property. See 1 Pow. Mortg., by Coventry & Rand, 380–

402, and the notes of the editors, where the principal cases are collected. Hughes v. Edwards, 9 Wheat. [22 U. S.] 489; Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 152; Dexter v. Arnold [Case No. 3,857]; Whiting v. White, 2 Cox, 290, and cases there cited; Ord v. Smith, Sel. Cas. Ch. 9; Hansard v. Hardy, 18 Ves. 459. Nor am I disposed to question the authority of another class of cases, where there has been a solemn recital and acknowledgment of the mortgage, as such, in solemn deeds and other written transactions with third persons. Such were the cases of Smart v. Hunt, cited in 4 Ves. 479; Hardy v. Reeves, 1d. 466; Hansard v. Hardy, 18 Ves. 455. See, also, the cases cited in 1 Pow. Mortg., by Coventry & Rand, p. 385, and note; Whiting v. White, 2 Cox, 290, 293, 294. But, there is no pretence, that there is any evidence in the present case, which brings it within the reach of the principle of either of these classes of cases.

What, then, is the principal ground of reliance of the plaintiffs to sustain the right to redeem? It is founded upon certain parol acknowledgments, asserted by two witnesses, Elisha Angell and Jonathan Arnold, to have been made to them in conversation by Aza Arnold. One question which has been argued is, whether any naked, verbal admissions, or parol acknowledgments in conversations, are sufficient to establish the fact, that the mortgagee has treated the conveyance as a mortgage within twenty years. Such admissions and acknowledgments are certainly open to the strong objection, that they are easily fabricated, and difficult, if not impossible, to be disproved in many cases, and that they have a direct tendency to shake the security of all titles under mortgages, even after a very long, exclusive possession by the mortgagee; nay, even after the possession of a half-century. I am fully sensible of the force of the objection, and I can scarcely think it can be overstated. Lord Alvanley in Whiting v. White, 2 Cox, 290, 300, Coop. 1, reprobated the introduction of any such parol evidence; and, commenting on the case of Perry v. Marston, 2 Brown, Ch. 397, where it has been supposed, though it is not, perhaps, certain (see 1 Pow. Mortg., by Coventry & Rand, pp. 381, 382, and note H; Reeks v. Postlethwaite, Coop. 161, 164; Lake v. Thomas, 3 Ves. 17. See, also, Mr. Belt's note to his edition of 2 Brown, Ch. 397), that Lord Thurlow thought parol evidence admissible, and sufficient to give the plaintiff a decree for redemption; but he, in fact, decided against it, on another ground. Lord Alvanley said,—"I cannot help thinking, that it would have been a very wise rule, if no parol evidence had been admitted upon these subjects. It is clear, that the party obtains an irredeemable interest by twenty years' possession; and then that interest is to be totally changed by this sort of loose conversation." He afterwards added,—"I will not take upon myself, in the present case, to lay down any rule that shall contradict

that authority, because it is not necessary. But, at any rate, I think the declarations must be clear and unequivocal; and in the present case I do not think that the evidence is of that clear and unequivocal nature, as to justify the court in giving the plaintiff a redemption." The same point came before the vice chancellor (Sir Thomas Plumer) in Reeks v. Postlethwaite, Coop. 161; and he, after admitting, that there was no case in point, upon principle decided, that parol evidence was so admissible. But after sifting the evidence in that case (which sufficiently shows the dangers of such evidence), he decided, that it was not satisfactory, and refused the redemption. Then came the case of Barron v. Martin, Coop. 189, 19 Ves. 326, where Sir William Grant thought the parol evidence admissible, but at the same time, on account of its being unsatisfactory, decided against the redemption, and adhered to the rule laid down by Lord Alvanley, that it ought to be clear and unequivocal to justify a redemption. But there is an important remark made by this eminent judge in the same case, which is worthy of special notice. "It is now decided," (said he), "that twenty years' possession by a mortgagee, will prima facie bar a right of redemption; and it lies on the mortgagor to show, that such length of possession ought not to produce that effect." He added—"The onus lies on the mortgagor to show that fact, in order to defeat the effect of the possession." In Marks v. Pell, 1 Johns. Ch. 594, the same point came before Mr. Chancellor Kent; and the only evidence relied upon in favor of the redemption, was certain naked, unassisted confessions of the mortgagee, stated by witnesses. The learned judge decided, upon a review of the evidence, that the redemption ought not, under all the circumstances, to be allowed; for "it would be setting up a dangerous precedent, to give effect to a stale claim, upon such uncorroborated and loose confessions." In delivering his opinion, he said; "It was once observed in the supreme court (6 Johns. 21), that acknowledgments of the party as to title to real property, are a dangerous species of evidence; and though good to support a tenancy or to satisfy doubts in cases of possession, they ought not to be received as evidence of title, as it would counteract the beneficial purposes of the statute of frauds. That doctrine strikes me as just and sound; and principles are essentially the same in both courts." From this language I cannot but infer, that the learned chancellor was against the admissibility of the evidence, though he did not deem it necessary to decide the case on that point. His very able reporter (Mr. Johnson) has supposed differently, in his marginal note of the case; but I have been unable so to read the case.

I have not in my researches found any other cases upon the point. And, what is very remarkable, there is no instance of a decree being made upon such parol evidence in

favor of the party seeking to redeem. In the present case I am spared the necessity of deciding the general principle; for, admitting that parol evidence is admissible (which I am by no means prepared to decide, and I wish to reserve for further consideration), I am of opinion, that the parol evidence of the confessions and conversations of the mortgagee, testified to by the witnesses, is wholly unsatisfactory, too loose, and too equivocal, and too infirm in its reach and bearing and circumstances, to justify any decree in favor of a redemption.

What is this evidence? Elisha Angell says, that in 1828, (just twenty-one years after Aza Arnold had been in possession of the estate,) he was employed by Aza Arnold in rebuilding a saw-mill on the Paget farm. Aza told him, that he must charge it in a separate account, different from any other charges against him; for the reason, that his brothers' heirs had an interest in that estate, and that was a building he built on his own account. His other charges he had made against Aza. His work on the mill he charged, so much per day, for work on the saw-mill. Upon being interrogated by the plaintiff's counsel, as to the conversation, whether Aza named what heirs and what brothers were interested in the saw-mill, he answered, that it was so long ago, and he had no interest in the business, that he could not be positive; that his words were pretty much, that his brothers' heirs had an interest in that estate, and none in the mill; and that he could not say, that he named any brother. Now, it is plain, that every word of this statement may be true, and yet no reference whatever have been had to any supposed title in his brother Jonathan's heirs; for the children and heirs of his deceased brother, Welcome Arnold, had an undisputed title in one third of the Paget farm.

The other witness is Jonathan Arnold. He is one of the heirs of Jonathan Arnold the mortgagor; and of course would be incompetent to give testimony in the case, while he retained his interest as such heir. After the bill was brought, and indeed as late as August, 1836, he sold his interest to his son, John Randall Arnold, as he asserts, for fifty dollars; and it cannot be disguised, that, in all probability, the sole object of the conveyance, pendente lite, was to qualify himself as a witness in the cause. So much, then, for his position in the cause, as to his general credibility under such circumstances. He says, that three or four years ago, (that is to say, about one or two years before Aza Arnold's decease), he was at the Paget farm, and had a conversation with Aza Arnold, who is his uncle. He asked his uncle, if he had bought the right of his uncle Jonathan in the farm; and he told him, he had got a deed of Thomas Arnold of his right, that is, Jonathan's right; that he had bought out the mortgage right of him; that he had a warrantee deed, from Thomas Arnold, of Jona-than's interest in the farm; that he does not recollect any other particulars of the conversation, except what is above-stated. Now, taking this conversation together, it may be true; and yet it establishes nothing beyond what the deed from Thomas to Aza Arnold upon its very face imports. It does not establish, that the title, that Aza then claimed in the premises, was a mere mortgage title, or that any mortgage was then subsisting. And if it did, I must say, that such loose and indeterminate conversations, which I cannot but suspect were designedly had with Aza, with a view to being used as testimony against him, would weigh with me very little in a case of this sort. No man would be safe, if upon such conversations his title to real estate, as an absolute owner, after twenty-five years of exclusive possession, could be thus cut down to that of a mere mortgagee.

This is the whole testimony to establish the right of redemption; for the testimony of Stephen Dexter was rejected by the court at the hearing, as the legal owner of the title, though a trustee for the benefit of the plaintiffs, the cestuis que trust, in the premises in controversy. It is true, that he is made a defendant in the bill; but he cannot be treated otherwise than as a substantial plaintiff, and, indeed, as the proper party to redeem. If, indeed, his testimony had been admissible, it would not, under the circumstances, have changed in the slightest manner, in my judgment, the posture of the case; for I think it impossible that the conversation which he states can, without straining (even if its credibility were fully admitted), be interpreted to amount to a clear and unequivocal admission by Aza Arnold, that he then held title to the farm as a mere mortgagee. Even the witness, though put by a cross-interrogatory to that very point, does not pretend to say that.

The answer of Thomas Arnold in the former case of Dexter v. Arnold [Case No. 3,-855], in 1822, was offered in evidence in the present case, and objected to as evidence against all the defendants. Although I am clearly of opinion, that nothing contained in that answer can be evidence against Aza Arnold, or those who claim title under him to the Paget farm; yet it was allowed to be read, de bene esse, at the argument. I still retain the same opinion of its inadmissibility; but as, in my judgment, nothing contained in it can rightfully trench upon the title vested in Aza Arnold, under the deed of Thomas Arnold to him in 1807, I have not thought it necessary to enter upon any general argument to establish its incompetency.

Upon the whole, my opinion is, that the bill ought to be dismissed, with costs.

DEXTER (ARNOLD v.). See Case No. 557.
DEXTER (CRAWFORD v.). See Case No. 3,368.