# GENERAL TERM.

[Continued from page 291.]

---

*William F. Clark, administrator of Orange S. Clark, *v.*
Orange G. Clark.

[In Chancery.]

*Implied Trust. Trustee. Accounting. Rents and Profits.
Statute of Frauds. Consideration. Parol Evidence.*

There. is an implied trust in favor of the party furnishing the consideration paid for land
deeded to a third party, and hence parol evidence as to the understanding and inten-
tion of the parties is not excluded by the statute of frauds.

S. procured certain land, which he had paid for with his own money, to be deeded to G.
This land, with the consent of S., was turned in by G. at $300, in part payment for
certain other land the price of which was $700. G. paid $400, the balance of the consid-
eration, toward the same, and took a deed thereof to himself. G. therefore held three
sevenths of the last named premises in trust for S.

It being obvious from the circumstances of this case that no accounting for rents and profits
was ever contemplated, G. should account only for the rents and profits of an undivided
three sevenths of the premises since the decease of S.; and the orator is entitled to par-
tition or severance of said three sevenths in such manner as the court of chancery shall
deem just and equitable, or to such a decree as will give him, as administrator of S.,
an equivalent therefor and the rents and profits.

Bill in chancery. The said Orange S. Clark, who brought
this bill in chancery in his life-time, alleged in his bill that about
the year 1836 he resided on a piece of real estate situated in
Groton village ; that prior thereto he had made negotiations for
its purchase, and erected buildings thereon, with a view of mak-
ing it a homestead for himself and family ; that he at that time
was a vigorous man to labor at his trade, which was that of a
carpenter and joiner ; that in the spring of the year 1836, he
being somewhat addicted to the use of ardent spirits, and having

---

*Decided general term, November, 1868.

a family, it was thought best, in order to have a permanent place of abode for himself and his family, and to prevent its being squandered and wasted, to have a deed of the place taken in the name of his eldest son, Orange G. Clark, who was about twenty-two years old, to hold the same in trust for the orator and for his benefit ; that in April, 1836, a deed was taken from one Hezekiah Kimball to said Orange G., with this understanding, and by his advice and consent, and for which he never paid a cent, but the consideration wholly moved from the orator ; that said Orange G. at that time was unmarried and had no family ; that he occupied said premises as. a homestead for many years afterwards ; that about the year 1845, in January, said Orange G., with consent all around, exchanged said Kimball place for another larger place, a little out of the village aforesaid, belonging to another son of the orator, viz., William F. Clark ; that the price of this place was called in the exchange $700 ; that the Kimball place was called in said trade $300, and the said W. F. Clark, at or perhaps previous to the time of said last named trade, owed the orator the sum of eighty dollars, which was also put into the new place, and the deed was taken by said Orange G. Clark, in the same manner and for the same purpose as was the deed of the Kimball place, viz., to hold in trust for his benefit, to the extent of what the orator put into the place ; that he let the said Orange G. have two cows, which were taken by said Orange G. to hold in trust for the orator, and to prevent their being squandered by drink and improvident bargains ; that the orator moved on to the place had of Wm. F. Clark as aforesaid, and lived there many years with his wife, who deceased about the year 1858 ; that at the time said Orange G. took the deed of the Kimball place the orator was free from debt ; that since the death of his said wife the orator has part of the time lived in the family of the said Orange G., who now resides on the W. F. Clark place, and most of the time that he has lived on said W. F. Clark place he has labored on the farm and at his trade, repairing buildings, &c., and Orange G. had had the benefit thereof, as well as the income of the place, except what the orator and his wife, prior to her decease, needed for their support ; that the orator thinks he has furnished $500 of the pur-

chase money of the W. F. Clark place, including the two cows, but excluding the labor of the orator and his wife, and the income of the farm ; that said Orange G. has received, in the avails of the place, the just share of the orator, and the labor of the orator and wife, to a large amount more than any support he has received on said place, to wit, $300 ; that the orator is now in feeble health and unable to support himself, and is now supported, and has been a long time, by some of his other children ; that he has solicited and demanded help for his support and maintenance from said Orange G., in consideration of said trust fund in his hands, but said Orange G. refuses to help him, or deliver up said property, or any part thereof; that he has demanded an accounting in the premises of said Orange G., but he wholly declines and refuses to make any accounting.

### PRAYER :

That said Orange G. may be decreed to pay over to the orator, or such other proper person as the court may appoint to receive the same, whatever sum, upon a proper accounting, may be found due to the orator in the premises, or convey to the orator or to some proper person for his benefit and support, such property or just and equitable proportion thereof as in equity belongs to him, and for further relief, &c.

The defendant, Orange G. Clark, alleged in his answer that he consented to take the deed of the Kimball place, on condition that the place was to be absolutely his, but that he was to keep the place as a home for his father and mother so long as they or either of them lived, and when they both deceased the place was to be his, without accounting to any one for the same ; that previous to his taking a deed of the Kimball place, his father wished him to purchase a small place called the " Bean place," in Groton, and he promised, if he would, he would give him $100 towards paying for the same ; that he bought the place, and his father gave him $80 towards paying for it ; that in the exchange of the Kimball place for the Wm. F. Clark place, the deed of the latter was made to him with his father's consent and request, and he and his wife were to have a home on the same condition as stated when he took a deed of the Kimball place ; that said cows were not to be a charge to him in any way ; that his father and mother liked the

W. F. Clark place the best, and were ready to turn them in for the sake of the improvements in their home ; that in taking this deed no other conditions were made than as set forth in taking the deed of the Kimball place ; that he subsequently sold the Bean place, and turned in the avails of the same towards the Wm. F. Clark place, and the eighty dollars, and two cows above mentioned, and the Kimball place, is all the property there ever was in the W. F. Clark place that his father ever had any interest in ; that his father and family lived on the W. F. Clark place after the purchase thereof, with the exception of one year, until the death of his mother, and that his father had a part of the rent of said place for the year he was so absent therefrom.

After the commencement of this suit and before the hearing, Orange S. Clark deceased, and the suit was revived in favor of his administrator, Wm. F. Clark.

The answer was traversed, and testimony was taken, and the cause was heard on bill, answer, replication, and proofs, at the June term, 1868, Caledonia county, STEELE, Chancellor, when it was ordered that a decree pass, *pro forma*, for the orator, according to the prayer of the bill, from which the defendant appealed.

————— —————, for the defendant.

*Leslie & Rogers*, for the orator.

The opinion of the court was delivered by

PECK, J.   There is no dispute in the pleadings or evidence but that the intestate, some few years prior to 1836, purchased the premises in Groton village, consisting of about half an acre of land, on which he built a dwelling-house, and on which were some outbuildings; that he and his family had resided on the premises several years prior to 1836, and that in 1836 he still owned the premises, but that the legal title was in Kimball ; that in 1836 it was thought best to have a conveyance from Kimball, and that in consequence of the intestate being at times somewhat improvident, the defendant, his eldest son then about twenty-two years of age, was solicited by the intestate and his family to have the deed of

the premises from Kimball taken to the defendant for the benefit of the intestate, and the more effectually, as they thought, to preserve the place as a home for the intestate and family consisting of a wife and minor children; that the deed was so taken to the defendant, to hold for the benefit of the intestate by verbal agreement between the intestate and the defendant. It is not claimed by the defendant that he ever paid any consideration for the deed, or that he ever agreed to pay any thing. But the defendant claims in his answer and testimony that it was further agreed, that on the death of his father and mother, the premises were to be his, the defendant's, property; the orator claims that the defendant was to have no beneficial interest in the premises, but was to hold the title in trust for the intestate and his wife. It being admitted by the answer, as well as proved, that the intestate paid the whole consideration, and that the defendant neither paid nor agreed to pay anything, it is a case of an implied-trust in favor of the party who advanced the consideration, and hence parol evidence as to the understanding and intention of the parties is not excluded by the statute of frauds. This was substantially all the property the intestate owned at the time the deed was taken to the defendant. But without going into an examination of the testimony, it is sufficient to say, that upon a careful examination of the proofs, the direct evidence and the circumstances disclosed in the testimony, we are satisfied that the balance of evidence is that the defendant took the conveyance from Kimball simply in trust, as is claimed on the part of the orator, and that there was no agreement or mutual understanding that the defendant should have any beneficial interest in the premises. If the defendant had any different understanding, it was not justified by what was said between the parties, or by the facts and circumstances attending the transaction.

The next question is, what effect upon the rights of the parties was produced by the subsequent purchase of the Wm. F. Clark place, and the turning in of this Kimball place in part payment. It appears that about 1845, by mutual arrangement between the defendant and his father and mother, the defendant purchased a small farm a short distance out of the village, called the Wm. F.

87

Clark place, at the price of $700, and this Kimball place was turned in, in part payment, at $300 ; and the intestate and his wife and a minor son thereafter resided on that farm a number of years. We find that no different arrangement was made in reference to the right of the intestate in the Wm. F. Clark place from that which had existed in reference to the Kimball place, and that this was but an exchange on the part of the intestate of the Kimball place for an interest equal in amount in the Wm. F. Clark place. The deed of the Wm. F. Clark place having been taken to the defendant, he holds three sevenths of the last named premises, (being the premises in question,) in trust for the intestate, precisely as he previously held the Kimball place. It appears that just previous to the time that the defendant took the deed of the Kimball place, he, or he and his father, purchased a small place in Groton village, called the Bean place, for $275, and the intestate furnished to the defendant money to pay towards the same, some $80 or $87 ; the defendant paid the residue out of his own means. There is testimony on the part of the orator, to the effect that that was a joint purchase by the intestate and the defendant, and that although the deed was taken to the defendant, the intestate had an equitable interest to the amount that he paid or furnished the means to pay. If this is so, then the interest of the intestate in the premises in question would be increased by that amount, as it appears that that place was sold by the defendant and the avails paid towards the premises in question. But the testimony on the part of the defense is, that the intestate gave the $80 or $87 to the defendant as a gift, saying, that by giving his other two boys one year of their time before twenty-one years of age, as he intended to do, he could do as well by them. We think the evidence on this point will not warrant the conclusion that a trust exists in reference to the premises in question, based on this advance of the $80 or $87 by the intestate. It appears also that at the time the defendant purchased the premises in dispute, (the Wm. F. Clark place,) the intestate had two cows on that place, which by agreement went in part payment for the premises, and the orator claims that to the extent of the price at which they were reckoned in payment, a trust in the premises was thereby

created in favor of the intestate. But we think the weight of the evidence is, that that was not so intended or understood at the time. As the defendant's mother died before her husband, it is unnecessary to inquire what her rights would have been had she survived him. The orator claims that the defendant should account for rents and profits of the intestate's share of the premises from the time he, the defendant, moved on to the premises, about 1858. It is manifest from the manner in which the intestate and the defendant have occupied the premises, up to about the time of the intestate's decease pending this suit, that no basis of accounting for rents and profits could be adopted that would be likely to approximate nearer to justice in this matter than to leave it where the parties have left it. If each has not enjoyed the rents and profits in exact proportion to his interest in the premises, it is as near that as the parties intended. It is obvious that no accounting for rents and profits was ever contemplated by the parties, and none should be ordered, up to the death of the intestate. But for the time since the intestate's death, the defendant must account for the rents and profits of the three undivided sevenths of the premises belonging to the intestate at his decease, and which is the proper estate of the intestate; and the orator is entitled to partition or severance of said three sevenths, in such manner as the court of chancery shall deem just and equitable on the basis above stated; or that such decree be made as will give the orator as administrator an equivalent for said three sevenths, and the rents and profits thereof since the decease of the intestate. As to the other dealings mentioned in the pleadings and evidence, neither party is entitled to an accounting or decree. The question of costs in the court of chancery to be disposed of by that court.

Cause remanded to the court of chancery to carry out the decree thus modified.