HARRY M. WALSTON, et al. *vs.* ELIZABETH SMITH, et al.

May Term, 1896.

Present: Ross, C. J., TAFT, ROWELL, TYLER, MUNSON, START, and THOMPSON, JJ.

*Trust—Conveyance by Trustee—Parol Evidence to Rebut Presumption of Advancement.*

If one who holds the legal title to real estate as a passive trustee for the beneficial owner conveys to a third person, other than a *bona fide* purchaser for value, such grantee becomes merely a trustee in place of the grantor.

The result is not varied by the fact that the conveyance is made by direction of the beneficial owner.

And if, in such case, the grantee is the wife of the beneficial owner so that a presumption arises that the conveyance was by way of advancement or gift, parol evidence may be received to rebut the presumption.

Any evidence, in its nature competent, which throws light upon the intention of the parties in respect to the nature of the conveyance is then admissible.

From parol evidence thus received the master found that the wife took the title to hold in trust for the support of her husband and herself; to pay his debts, for many of which she had become liable by signing his notes; in case of his death, to reserve her homestead and dower, pay his debts, and distribute the remainder among his heirs, and, if it became apparent that he would survive her, to convey or secure the property to him. *Held*, that the trust was not too complicated to be denominated one "arising by implication of law," but was in legal effect strictly for the husband's benefit and, consequently, identical with that under which the property had been held by the grantor, except that the wife had the right to insist upon the payment of said notes; and that this addition could be properly engrafted by parol.

BILL IN CHANCERY. The cause came on for hearing upon the pleadings, the original and supplemental reports of the master and exceptions of both parties thereto, at the December Term, 1895, Addison County. *Taft*, Chancellor, *pro forma*, overruled the exceptions and dismissed the bill with costs. The orators appealed.

*L. F. Wilbur* and *Stewart & Wild* for the orators.

*Daniel Roberts* and *Elihu B. Taft* for the defendants.

Norton was a passive trustee for Smith. He conveyed to Smith's wife by Smith's direction. This amounted to a conveyance by Smith to his wife through a trustee, the necessary method. Consequently, the title passed according to the terms of the conveyance, and the statute of frauds forbids the creation by parol of such a trust as the orators seek to establish.

The trust sought to be set up is not one "arising by implication of law" and, so, capable of being created by parol. The want of consideration cannot be shown to raise a trust in favor of the grantor, and if it could the fact that the grantee was the wife of the real grantor stands for a consideration. In support of the first part of the proposition see *Salisbury* v. *Clarke*, 61 Vt. 453.

The trust must have arisen, if at all, at the instant the deed was taken, and have resulted from the transaction itself. *Perry on Trusts*, § 133; *Pinnock* v. *Clough*, 16 Vt. 500; *Williams* v. *Wager*, 64 Vt. 326; IV. Kent. Com. 305; *Botsford* v. *Burr*, 2 Johns. Ch. 405. Hence parol evidence of subsequent declarations and admissions was improperly received.

Even if parol evidence was admissible to rebut the presumption that the conveyance was a gift, it should have been confined to what took place before or at the time of the conveyance, whereas in fact all the evidence from which this trust was found consisted of declarations and admissions made afterwards.

This trust is not such as arises by "implication of law," for such a trust is solely for the benefit of the *cestui que trust*, while this one is complicated and involves the interests of others. Such a trust can be created only by an instrument in writing.

Ross, C. J. (1) The solicitor for the defendants concedes

that, when this case was before this court, as found in the 67 Vt. 542, the court properly held, on the findings of the master, that, by the conveyance from the intestate to Norton, the latter took simply the title to the premises, as a passive trustee, for the beneficial use of the intestate; and that, except to a *bona fide* purchaser, for value, without notice, Norton, without the consent and direction of the intestate, could convey no greater title than he, Norton, held. But he contends, that, it now being found by the master that the conveyance to Elizabeth, the wife of the intestate, was made with the consent and by the direction of the intestate, the deed concludes the intestate and those interested through him, so that against the plea of the statute of frauds, relied upon in the answer, no parol testimony could be received and considered by the master to determine whether Elizabeth took the same in trust for the intestate. He reasons: "Starting with the proposition that Norton was but a passive trustee of the title for Smith without interest, he was at all times subject to the direction of Smith as to its disposition;" that, "Norton was trustee for Smith, not for Smith's wife, nor for his creditors, nor for such as might be his heirs at his death;" that "the trust under which Norton held the title did not necessarily or naturally follow to his grantee. If the conveyance was made by consent and direction of Smith, it went according to the terms of conveyance unless otherwise restricted in the mode provided by law;" that "the conveyance of lands by a husband to his wife is universally through a trustee." Hence he concludes: "This was in legal effect a direct conveyance from Smith to his wife, and the only recognized mode in which he could convey to her."

If the conveyance to Norton had been made for the purpose of having him convey to the wife, Norton would have taken the title in trust for the wife. He would have taken and held it for the sole purpose of transferring it to her, and have held the title in trust for her sole use and benefit. In

such case the conveyance of the title to the wife through Norton would have been a direct conveyance of it from the husband to the wife. No right nor interest, legal or equitable, after such conveyance to Norton, would have remained in the husband. No trust, in behalf of the husband, could result from such conveyance. Unquestionably, the cases cited by the solicitor for the defendants, holding that, if the husband conveys real estate to a third person for the sole purpose of having such third person convey it to his wife, and such third person makes the conveyance, no trust of any kind arises out of such conveyance in favor of the husband, are properly decided. Such cases are clearly distinguishable from the case under consideration. Here, on the facts found by the master, Norton, by the conveyance from the intestate, took the title, as a passive trustee, for the sole benefit of the intestate. The intestate was to remain in possession, and manage the property. As held when this case was before this court, in 67 Vt., Norton could convey, when the conveyance alone is considered, no greater rights nor title to the estate than he held. It is immaterial in this respect, whether Norton held the property impressed with an express or an implied trust, in favor of the intestate. "Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing or carrying into effect the terms of an express trust, or devolves from a trustee to a third person who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary." Pomeroy's Eq. Jur. § 1048. This, in substance, this court held when it previously had the case under consideration. The solicitor for the defendants con-

·cedes that that decision was correct. No new facts have been brought into the case, bearing upon the operation of the conveyance by Norton, considered by itself. It follows, therefore, that, by that conveyance, when the conveyance alone is considered, Mrs. Smith took the title to the prop-·erty subject to the same trust which was impressed upon it, when Norton held the title, to hold for the beneficial use of the intestate. It is found that she had full notice of the trust and paid nothing for the conveyance. She does not ·stand as a *bona fide* purchaser without notice. The trust impressed upon the property when Norton held the title, by his conveyance considered by itself remained when the title ·came to Mrs. Smith. Whether that conveyance created strictly a resulting trust need not be determined. To con-·sider it a resulting trust is to regard it in the light most favorable to Mrs. Smith.

By the concession of the parties, the intestate, while Nor-·ton held the legal title, was the equitable owner of the property. The property conveyed by the intestate to Nor-·ton, by the concession of the parties, became a trust estate. In kind, it was such a trust as arises by implication and ·operation of law. As said in the American notes to *Dyer* v. *Dyer*, 1 L. C. in Eq. 276, "The trust which results by im-·plication and operation of law, from the payment of the purchase money or of a part of it, and without any agreement, is a pure and simple trust of the ownership of the land; it is not an interest in the proceeds of the land, nor a lien upon it for the advance, nor an equity or right to a sum of money to be raised out of it, or upon the security of it." However created, such was the trust in regard to this property existing between the intestate and Norton, when Norton held the title. By Norton's deed of this property, when considered by itself, to Mrs. Smith, the same trust con-·tinued, or a trust in every essential, a resulting trust. If the conveyance by Norton had been to a stranger under the circumstances in which it is found to have been made to

Mrs. Smith—with notice and without consideration—the same identical trust would follow. To render the conveyance valid and freed from the trust under which Norton held the title, the burden was on Mrs. Smith to establish, that she took the title from Norton without notice of the trust, and for valuable consideration, or under such circumstances that the law would presume the property conveyed to be a gift. The master has found that she had notice of the trust and paid nothing for the conveyance. Hence from the conveyance, considered by itself, with these circumstances added, the same trust under which Norton held the property would continue or be implied, if no other facts were shown. A new fact, or "circumstance of evidence," has been brought into the case,—the fact that the intestate consented to and directed the conveyance by Norton to his wife. This is frequently spoken of as a "circumstance of evidence." I. Lewin on Trusts, *171. I. Perry on Trusts, § 143. When this "circumstance of evidence" is shown, where under the facts, otherwise, a trust would continue, or be implied to follow the conveyance of the property, then, because of the obligation of the person who furnishes the consideration for the conveyance to support the grantee, if nothing more is shown, a presumption or implication arises that he intended the conveyance as an advancement or gift. But this presumption or implication may be rebutted by circumstances or parol testimony. It is so held universally. It then becomes a question of what was the intention of the real parties to the transaction, or of the person furnishing the consideration for the conveyance and of the grantee therein. II Pom. Eq. §§ 1040, 1041; I Lewin on Trusts, *176; I Perry on Trusts, § 147, Am.Notes to *Dyer* v. *Dyer*, L. C. in Eq. 279-281.

Perry uses this language, "Whether a purchase in the name of wife or child is an advancement or not, is a question of pure intention, though presumed in the first instance to be a provision and settlement; therefore, any antecedent

or contemporaneous acts or facts may be received, either to
rebut or support the presumption." He says, § 134, "A
trust results from the acts, and not from the agreements of
the parties, or rather from the acts accompanied by the
agreements; but no trust can be set up by mere parol agree-
ments, or, as has been said, no trust results from the breach
of a mere parol contract." In the American Notes to *Dyer*
v. *Dyer* after considering the doctrine as applied at different
times and by various courts, on page 281 the writer
concludes, "When the doctrine is once taken up that the
intention of the parties is not to be found in the legal con-
struction of an instrument and that you are to infer it from
extrinsic circumstances, nothing short of a general admis-
sion of all parol evidence that throws light on the
intention, and is in its nature competent, can be adopted."
Hence all the evidence and circumstances received and
considered in regard to the intention of the intestate and of
Mrs. Smith, were properly received and considered by the
master, and their intention found established thereby
controls. If their intention then was that she should hold
the property freed from the trust as a gift or advancement,
she would so hold it. But if it were their intention that
she should hold the property in trust for him, that intention
must prevail. Being the equitable owner of the property
when the title stood in Norton, and having directed Norton
to convey to his wife, the intestate furnished the considera-
tion or paid the purchase money of that conveyance. It is
immaterial what the consideration for the conveyance is,
provided it is a good and valuable one, but it must belong
to the *cestui que trust*, and move from him. He may
borrow it from the grantee in the deed. *Page* v. *Page*, 8
N. H. 187. Such a trust, arising or resulting by implica-
tion of law, may be proved, rebutted or discharged by
parol evidence. *Page* v. *Page, supra*; *Botsford* v. *Burr*, 1 N.
Y. Ch. (L. ed.) and note 426 and cases there cited. That
the grantee agreed with the person paying the considera-

tion, at the time of receiving the conveyance, to hold the property for the use of such person, does not convert it into an express trust. As said by Mr. Perry, a resulting trust arises from the acts of the parties accompanied by their agreements. As said by the Supreme Court of Iowa in *Cotton* v. *Wood*, 25 Iowa 43, where the husband had paid the purchase money and had the property conveyed to his wife under an agreement between them that she would convey to him or to any one to whom he might assign his interest, upon his request so to do, and it was urged the agreement converted it into an express trust, "But the trust is based upon the fact of the payment of the purchase money of the property by the husband. This of itself created it. It cannot be that the consent of the trustee to hold the title for the benefit of the *cestui que trust*, or an agreement so to do, in the case of a resulting trust, will change its character. By the agreement the trustee simply assents to an obligation imposed by the law; the trust would exist, without the agreement, by operation of law. The agreement cannot destroy the effect of the conditions under which the law presumes the estate is held by the trustee. *Livingston* v. *Livingston*, 2 Johns. Ch. 540; *Page* v. *Page*, 8 N. H. 187; *Runnels* v. *Jackson*, 1 How. (Miss.) 358; *McCulloch* v. *Cowher*, 5 Watts & Serg. 427; *Harder* v. *Harder*, 2 Sandf. Ch. 17." "In another view the agreement between the husband and wife can be properly shown in evidence in order to rebut the presumption that the property was conveyed to the wife as an advancement."

Any legitimate evidence that will rebut such presumption may be received and considered. *Bickford* v. *Estate of Bickford*, 68 Vt., 525. It would be anomalous if she could by parol show that she was the wife of the intestate and that he, being the equitable owner of the property, but not having the title, directed Norton, who held the title for him, to convey it to his wife, to raise the presumption of an advancement, and that he should be

deprived of showing by the same kind of proof, what his direction was, to rebut the presumption. Such cannot be the law. This case, in all its essential features, is not unlike *Clark* v. *Clark*, 43 Vt. 685. The father, in that case, had paid for a piece of real estate for which he held a bond for a deed, and so had become the equitable owner of it. He directed the party who held the title to convey it to his son to hold in trust in order to have a permanent place of abode for himself and family and to prevent its being squandered and wasted. Afterwards he consented that this place should be exchanged by the son for another of greater value, towards which he claimed to have made some further payments. This, in substance, he set forth and claimed in his bill. The son in his answer claimed that he consented to take a deed of the first place on condition the place was to be absolutely his, but that he was to keep the place as a home for the father and mother so long as they or either of them lived; and that he exchanged the first place for the better one with his father's consent and at his request, to hold as his own, as he did the first. The answer was traversed and testimony taken. This court by Judge Peck said, among other things in regard to the first place: "It being admitted by the answer, as well as proved, that the intestate paid the whole consideration, and that the defendant neither paid nor agreed to pay anything, it is a case of implied trust in favor of the party who advanced the consideration, and hence parol evidence as to the understanding and intention of the parties is not excluded by the statute of frauds." It further held that the trust thus created followed the exchange into the second place to the extent of the value of the first place. It also considered parol evidence to determine whether the intestate contributed, at the time of the exchange, anything further towards the purchase of the second place, and held that, if so, the trust in the second place would be increased to the extent the intestate so contributed. In the case at bar, the

master has found from parol evidence that the trust impressed upon the property when the title was in Norton continued when Norton conveyed to Mrs. Smith, that the presumption that it was intended by the intestate to be an advancement to his wife was rebutted by such evidence, and that the defendant took the property charged with a trust for the intestate; that such was the intention of the defendant and of the intestate. In *Pinney* v. *Fellows*, 15 Vt. 525 and in *Page* v. *Page*, 8 N. H. 187, the original grantees took the title to the premises charged with a resulting trust in favor of another, and had conveyed them with the consent of that other, and in each case parol testimony was received and considered to establish that the trust continued. In *Pinney* v. *Fellows* the conveyance was, with the consent of the mother, the *cestui que trust*, from one son to another son. See also *Neill* v. *Keese* and note 51 Am. Dec. 746; *Bickford* v. *Estate of Bickford*, 68 Vt. 525; *Bennett* v. *Camp*, 54 Vt. 36; *Bent* v. *Bent*, 44 Vt. 555; *Barron* v. *Barron*, 24 Vt. 375; *Wallace* v. *Bowen*, 28 Vt. 638; *Clark* v. *Clark*, 43 Vt. 685; *Reynolds* v. *Sumner* and note, 9 Am. St. Rep. 523; *Brison* v. *Brison* and note, 7 Am. St. Rep. 189; *Bork* v. *Martin* and note, 28 Am. St. Rep. 570; *Farmers's and Traders's Bank* v. *Kimball Milling Co.* and note, 36 Am. St. Rep. 739.

(2) The defendant further contends that the trust found by the master is complicated, other and different from such as results by implication of law. In substance he urged this contention when this case was before this court as found in 67 Vt. 542, and it was denied. It was a question then in the case on the same facts as now and necessarily considered to uphold that decision; because—notwithstanding Norton held the property for the benefit of the intestate, as found by the master, if when the property was conveyed by Norton to defendant Elizabeth a new and different trust or an express trust was created between herself and husband, then the case could not have been disposed of as it

was. Besides it is found by the master that the trust found
by him, if in legal effect different from the one existing when
the title to the property was in Norton, was created
without being reduced to writing, and was proved by oral
testimony, to which the orators excepted, and which
exception they insist upon. This exception would preclude
the defendants from setting up any trust, in legal effect
different from that resting upon the property when the title
was in Norton. The conveyance by him on the facts found
carried the property into defendant Elizabeth's hands
impressed with the same trust under which Norton held it.
The decision in the 67 Vt. is conclusive upon the defendant
on' this point. This is not a rehearsing of the case upon
any point then before the court, and decided. All the facts
of the case on this point remain unchanged. But were this
point now open, we should find no occasion to disturb the
decision then announced. All the findings of the master in
regard to the details of the trust under which Elizabeth held
the property are, in effect, that she held it for the benefit of
the intestate. He finds that she was, to hold it, first, "for
their own living." She being his wife, he was legally bound
to support her. That she held it in part for her living or
support, was a holding it for his benefit. Such, in substance,
is one of the purposes of the conveyances established by oral
testimony in *Pinney* v. *Fellows*, and in *Clark* v. *Clark*,
*supra*. Then the master further finds that she held it,
"Secondly, as a source of payment of his debts, on many of
which she had become liable by signing his notes." This
was clearly a holding for his benefit within the meaning of
the law. In *Page* v. *Page*, *supra*, the original grantee
loaned the purchase money to the beneficiary, by the
payment of which the resulting trust arose, and held the
title for the payment of the loan. See also *Boyd* v. *McLean*,
1 N. Y. Ch. (L. Coop. ed.) 254 and note; 1 Johns. Ch. 594,
in which it is said, "If one should by way of loan, and

wholly upon the credit and account of another, advance the purchase money and take the title to himself as security for its repayment, he would hold the estate upon a resulting trust for the other, and, on repayment, would be compelled to convey." A number of cases are there cited in support of this doctrine. So too a deed absolute may, by parol, be shown to have been intended for security only. *Marks* v. *Pell*, and note, 1 N. Y. Ch., *supra* 258; 1 Johns. Ch. 594. These are the only purposes found by the master for which she was to hold it while both were alive. Under the master's findings, thus far, of the purposes for which she held the property, the intestate was the sole beneficiary. Upon payment of the notes which she had signed for him, the intestate could, in equity, have compelled her to convey the property to him.

To the same legal effect are the master's findings in regard to what the intestate and Elizabeth understood should be done with the property in the case of the death of either. He finds, "if she should survive him," she was "to reserve her own homestead and dower rights, and to pay up said debts, and if any property remained to distribute it to the heirs at law of said Alfred, in the same shares as they would have taken had he died owner thereof. She was the younger of the two, and expected to outlive him; but it was their common and mutual intent, in case it became apparent that she would probably die first, that she should deed the property back to him or give him some writing whereby he might hold the same." On this finding, in case of the death of either, they mutually understood the property was to be disposed of just as the law would dispose of it if it were his property. All the findings of the master leave the property belonging to the intestate when she held the title the same as it did when Norton held it, except she had the added right to first have his notes which she had signed paid out of it. This change could be made by parol.

These views render a decision of the other questions discussed in argument unnecessary.

*The pro forma decree is reversed and cause remanded to be proceeded with in accordance with the mandate covering the views herein expressed.*

*Taft*, J., dissents.