WINDSOR,
February,
1843.

ELIZABETH N. PINNEY, MARTIN PINNEY, HASKELL N. PIN-
NEY and OBED LAMBERTON *v.* WILLIAM FELLOWS and
CORNELIUS FELLOWS.

Pinney *et al.*
*v.*
W. & C.
Fellows.

### (In Chancery.)

Chancery will uphold a post nuptial agreement between husband and wife,
where the claims of creditors will not be prejudiced, the object of which
was to create a trust estate for the *separate* use of the wife, by means of
a purchase made from the personal earnings of the wife, and property
inherited by her during coverture, or loaned to her for such specific ob-
ject — the husband being unable to provide a support.

When one person purchases lands with his own money, and takes a deed
to another, a trust results by operation of law, to the person making the
purchase; and the same result follows where a feme covert purchases
with the consent of her husband, for her separate use, with means which
she was the meritorious cause of acquiring.

Though the deed recites the consideration to have been received from the
nominal purchaser, yet the cestui que trust will be allowed to prove, by
the trustee himself, that it was her money.

A part payment of the consideration, at the time of the purchase, will
charge the land with the trust, *pro tanto*.

The statute of 1797 did not require that the *creation* of a trust in lands
should be by writing, but simply that it be manifested and proved by
some writing.

The deposition of the trustee, subscribed and sworn to by him, fully proving
the trust, was held a sufficient manifestation and proof of it, in writing,
in a suit between the cestui que trust and an attaching creditor of the
trustee.

The wife being in the open and exclusive use and possession, in conjunc-
tion with her husband, of her trust estate, for a series of years, will affect
the attaching creditor of the trustee with notice of her trust interest, and
place him in no better situation than the trustee himself.

*Quære.*—Is the attaching creditor, as to the time of notice, to be treated as
a purchaser of the estate before levy of his execution?

THIS was an appeal from a decree of the court of chan-
cery, dismissing the orators' bill.

The orators, in their bill, set forth and charged, among
other things, that Elizabeth N. Pinney, on the 19th of
March, 1824, with the consent of her husband, the said
Martin Pinney, purchased of Asa Aikens a certain lot of
land in Windsor, and, at that time, and at divers times there-
after, did, with her own proper moneys, and with means
procured through the aid of her son, the said Haskell N.
Pinney, and by her personal services in taking care of an
infirm relative of the said Aikins, pay therefor, the sum of

WINDSOR,
February,
1843.

Pinney *et al.*
*v.*
W. & C.
Fellows.

$400; that very soon after said purchase, she, with her husband, moved onto said premises, and continued, ever after, to occupy and improve the same, in her own right, until, by reason of her advanced age, and the great infirmities of her husband, she removed with him into the house and family of the said Haskell N. Pinney, who, thereupon, by her permission and request, took possession of the premises, and placed the said Lamberton thereon, as a tenant; that the deed of conveyance of said premises was, by her request, executed by said Aikens to W. H. H. Pinney, another son of the said Elizabeth, who consented to accept the same, and to hold the premises in trust for her, and her heirs and assigns; that on the 15th of October, 1834, the said W. H. H. Pinney, for a nominal consideration, conveyed said premises to Joseph N. Pinney, another son of said Elizabeth, who, on the 22nd of March, 1836, for a like consideration, conveyed the same to the said Haskell N. Pinney; and that both of said last mentioned conveyances were with the express understanding that said premises were, and still continued to be, holden in trust, for the sole use of said Elizabeth, her heirs and assigns.

And the orators further alleged that, soon after the conveyance from said Aikens to said W. H. H. Pinney, the latter went into the state of Indiana, and there had certain dealings with the defendants, resident at Louisville, Kentucky, by reason of which they commenced an action, against him, and obtained a judgment, therein, for the sum of $1674.65; that they, afterwards, commenced an action on said judgment, by writ, returnable to Windsor County Court, and caused the said premises to be attached thereon, as the property of the said W. H. H. Pinney, although they well knew that the same was holden in trust for the said Elizabeth — that the consideration in the purchase thereof, had wholly passed from her, and that said W. H. H. Pinney had no equitable title thereto; and that they obtained a judgment in said suit, and took out execution thereon, and caused the same to be levied on said premises, on the 24th of June, 1836.

The orators further charged, that the defendants had commenced an action of ejectment for said premises, against the said Haskell N. Pinney and Obed Lamberton, and threatened to prosecute the same to judgment, — and prayed that

WINDSOR,
*February,*
1843.

Pinney *et al*
*v.*
W. & C.
Fellows.

the defendants might be enjoined from the further prosecution thereof, and from commencing any other action for the recovery of said premises.

The defendants, in their joint and several answer, admitted that they obtained a judgment, in Indiana, against the said W. H. H. Pinney — that they instituted a suit thereon in Vermont — prosecuted the same to final judgment, and levied execution thereof on the the premises in question, and subsequently instituted an action of ejectment for the recovery of the same, as charged in the orator's bill; but they denied that, at the time of suing out the writ on said judgment and causing the premises to be attached thereon, they had any knowledge, or had ever heard, that said Elizabeth had any equitable claim thereto; but that having caused the records of deeds, in Windsor, to be examined, and finding the legal title of the premises to be in W. H. H. Pinney, there being no record of any conveyance thereof, from him, and finding no declaration of any trust in favor of the said Elizabeth, they believed that both the legal and equitable title were in him.

The defendants denied that they had any knowledge until the filing of the orator's bill, of the alleged conveyances by W. H. H. Pinney to Joseph N. Pinney, and by him to Haskell N. Pinney; and they also denied that the premises were paid for with the proper means of the said Elizabeth.

The defendants further admitted, in their answer, that, after said premises were attached, in the suit on said judgment, and before the commencement of said action of ejectment, both their agent and attorney in Vermont were informed that said Elizabeth claimed said premises in equity, as a resulting trust, under the deed of said Aikens; and they further admitted that, at the time of the attachment of the premises, the said Martin and Elizabeth Pinney were residing thereon.

The answer was traversed, and testimony taken. Among the witnesses who testified was the said Asa Aikens and W. H. H. Pinney, the latter of whom deposed : that the premises in question were purchased by his mother, the said Elizabeth Pinney — that $100 were paid down, being a sum received by her from a relative in Connecticut — that, as she desired a credit for the balance, she requested the deponent

WINDSOR,
February,
1843.

Pinney *et al.*
*v.*
W. & C.
Fellows.

to take a conveyance of the premises, and execute his notes for the balance, and a mortgage for security, as required by said Aikens — that the conveyance was, accordingly, made to him, and that the notes for the said balance were paid, in part, by the labor of his mother, in taking care of the father of said Aikens, partly by wood and money furnished by her and her son Haskell Pinney, and partly by an advance from the deponent, which was refunded to him by the said Elizabeth; and that the premises were held by him as a naked trust for the use and benefit of his mother, until the 14th of July, 1834, when he conveyed the same to his brother J. N. Pinney, with an express understanding that they were to be holden by him in like manner ; that he never had possession of the premises, nor exercised any control over the same, nor received any rents therefor ; and that the taxes had always been paid by his mother.

Besides this manifestation of the trust, in writing, by the trustee, the facts found from the testimony sufficiently appear in the opinion of the court.

*E. Edgerton*, for orators.

It appears that Elizabeth N. Pinney personally negotiated the purchase and took the title in the name of her son, merely because she could not, on account of her coverture, execute the required security for the payment of a part of the purchase money. To all this the assent of her husband is to be inferred from the fact of his occupancy, with the oratrix, under the purchase, and from his joining in the bill to enforce the trust.

By express understanding between the grantee, named in the deed of conveyance, and the oratrix, the grantee was not to become the owner of the property—was not himself to make the payments for it—did not make them—never was in possession, and never exercised or claimed any ownership or control over the property whatever. On the contrary, the oratrix furnished the purchase money, and she and her husband, and those claiming under them, have been in possession from the date of the conveyance to the present time.

Wm. H.H.Pinney as between himself and the oratrix, held the estate in question, as her trustee. The agreement be-

tween them, was, that he should *so take and hold it*, and
that the *purchase money* should be paid from *her property*.
This was a contract to which, in equity, she was competent
to become a party, either with, or without, the assent of her
husband. It had, for its object, the support of herself and
her children, which her husband neglected to provide.
Nothing more was done than a court of chancery would
have ordered, had the husband, at that time, attempted to
prevent the arrangement and get the possession of the funds
himself, and the oratrix had thereupon applied to chancery
for an order upon the subject. The fact that the husband
did not object, rendered such application unnecessary. 2
Story's Com. on Equity, p. 596, §1366, 1367, 1368, 1372;
p. 606, §1379, 1380; p. 612, §1387; p. 630, §1402 to
1408; p. 637, §1411; p. 641, §1414 & 1415; p. 647,
§1421; p. 651, §1424. *Kenney* v. *Udall,* 5 Johns. Ch.
R. 473, 477.

The effect of this agreement and the payment of the first
hundred dollars by the oratrix, was to make Wm. H. H. Pin-
ney a trustee of the oratrix, *immediately on his taking the
title,* with an equitable lien, undoubtedly, upon the estate,
to secure him against the payment of his notes and mortgage,
which he gave for the balance of the consideration. And
when, subsequently, the oratrix caused these notes to be
taken up with "her money and means," then the trust be-
came a *naked* one, and all lien in favor of the trustee ceased.
2 Story's Com. on Equity, p. 458, §1212; p. 464, §1218.
*Boyd* v. *M'Lean,* 1 Johns. Ch. R. 582.

It is, however, unimportant at what precise point of time
the said Wm. H. H. Pinney became trustee. Even if the
oratrix, by reason of her coverture, were under such a disa-
bility, as has been urged, that her acts in relation to this
matter were all void, yet certain it is, Wm. H. H. Pinney
has paid nothing towards the estate, and the estate is not,
therefore, in equity, his, but belongs to the person whose
money has actually been paid for it; and if the money can
be traced into the land, the court of chancery will follow it
there, and enforce the trust, as one *resulting* from, and upon,
the payment of the money. 2 Story's C. on Equity, p. 443,
§1201; p. 456, §1210.

The property of the oratrix went to pay for the land;

WINDSOR,
*February,*
1843.

Pinney *et al.*
*v.*
W. & C.
Fellows.

WINDSOR,
February,
1843.

Pinney et al.
v.
W. & C.
Fellows.

property, too, which is not shown ever to have been reduced to the possession of the husband. 2 Story's Com. on Equity, p. 603, §1375.

In chancery, a trust estate is equivalent to the legal ownership; and a purchaser or creditor of the trustee, with notice of the trust, is bound by it. The actual possession of the *cestui que trust* is, of itself, a sufficient notice, and evidence to all the world, of the extent of his right. 1 Cruise's Dig. page 323, §1, 2 ; 3 Mass. R. 573 to 582, Reading of Judge Trowbridge ; *Taylor* v. *Wheeler*, 2 Vernon, 564 ; 4 Mass. R. 639 ; 6 Mass. R. 30 & 31 ; 6 Mass. R. 488–9 ; 10 ib. 61, 62, 63 ; 2 Vt. R. 544 ; 10 Vt. R. 452.

The trust, if not a resulting one, which needs no declaration, has been sufficiently *declared*, and proved *by writing*, &c., and cannot be avoided under our statute of conveyances, page 315, §522 of the Revised Statutes. See Wm. H. H. Pinney's deposition ; 1 Cruise's Dig. page 310, §35, 36, 37,38 ; *Ambrose* v. *Ambrose*, 1 Peere Wms. 321 ; 5 John. Chan. 12.

*C. Marsh*, for the defendants.

I. Do the facts charged in the bill, and shown by proofs, make out a trust estate in the oratrix, resulting by implication, or operation of law ?

The best definitions of a trust created by implication of law, and which may be proved by parol, is found in the case of *Bottsford* v. *Burr*, 2 Johns. Ch. R. 415, where Ch. J. Kent is made to say : " The resulting trust, not within the ' statute, and which may be shown without writing, is when ' the purchase is made with the proper moneys of the *cestui* ' *que trust* and the deed not taken in his name. The trust ' results from the original transaction, at the time it takes ' place, and at no other time, and is founded on the actual ' payment of money, and on no other ground. It cannot be ' mingled or confounded with any subsequent dealings ' whatever."

Lord Hardwick, in *Loyd* v. *Spillet*, 2 Atk. 148, gives much the same definition, though in less explicit terms : " Where an estate is purchased in the name of one person, ' but the money or consideration is given by another, that is, ' the *cestui que trust*,"— and adds : " He is bound down by

Windsor,
February,
1843.

Pinney *et al.*
*v.*
W. & C.
Fellows.

' the statute of frauds to construe nothing a resulting trust ' but what are there called trusts by operation of law." Ch. J. Kent adds, in *Bottsford* v. *Burr* : " It is is a questionable ' doctrine in the view of policy, even under this limitation, ' and has been admitted with great caution."

How, then, do the allegations in the bill and the proofs in this case correspond with the definition given ?

It cannot be pretended that the payments were made with the proper moneys of the oratrix. The money was, it is true, in her possession when paid over ; but " the possession of the wife is the possession of the husband, and so is her property." *Nelthorpe* v. *Anderson*, 1 Salk. 114 ; Bac. Ab. 481. A portion was paid by the labor and care of the wife, in nursing and boarding ; but, " the fruits of the wife's labor belong to the husband, and do not survive to the the wife, but vest in the representative of the husband." *Burkley* v. *Collier*, 1 Salk. 114. See, also, *Parks & Co.* v. *Cushman*, 9 Vt. R. 324.

The money paid, and the care, labor and expense in boarding and nursing, &c., were the property, and in the possession, of the husband. The other payments were made by Haskell N. Pinney, with his own labor, wood, &c. How can a trust result in favor of *one*, while all the property composing the consideration, was thus the property of *others* ? No implication of law can arise from such a complication, such a mixture, of facts and interests as is shown in this case.

The bill states — but there is no evidence of it, nor is it admitted in the answer — that this contract of the wife was made with the consent of the husband. But if it were so, the property being the husband's, the estate would result to him and not to the oratrix. It is no answer to this objection that this is a proceeding on the equity side of the court ; for courts of equity are as much bound by the statute of frauds as courts of law ; and courts of law are as much bound to sustain resulting trusts by parol evidence, as courts of equity.

II. Can the allegations of the bill be sustained by parol evidence without writing — thus contradicting the deed in terms ?

If there be any one position in the law that admits of no

WINDSOR,
February,
1843.

Pinney et al.
v.
W. & C.
Fellows.

exception, it is, that a deed fairly and understandingly executed, cannot be contradicted by parol evidence. It must, however, be admitted that, in the state of New-York, and, to some extent, in the English courts, in the *solitary instance* of resulting trusts, both in courts of law and equity, parol proof is admitted to contradict the deed. But the doctrine is not, even now, well established, and many authorities are to be found in England, where its correctness is both questioned and overruled — Rob. on Stat. of frauds, 94–99.

The opinion of Chancellor Kent, in *Boyd* v. *McLean*, 1 Johns Ch. R. 582, 586–7 is relied on, in the argument for the orators. The chancellor in this case relies much on the authority of Sugden, Law of Vendors, 415, as having settled the point that parol evidence may be admitted to contradict both the deed, and defendant's answer; but admits that Roberts holds a contrary doctrine.

In the case before him, he has examined all the previous decisions on that point, and regards them as establishing the same point. We have, also, recurred to the same cases, except precedents in chancery and, in no one of them, is the point directly agitated; nor is it stated whether the testimony offered did, or did not, contradict or vary the deed. The position taken is, that, where the money was paid by one person, and the deed taken in the name of another, parol proof might be admitted. It may, perhaps, be implied that the deed acknowledged the consideration to have been received of the grantee; but it is no where stated. The chancellor relies, principally, on the case of *Gascoyne* v. *Thwing* 1 Vernon, 366, as a leading case.

But the court in Massachusetts take a very different view of the decisions in England, to which the chancellor refers. Mr. Justice Parker, in *Northampton Bank* v. *Whiting*, 12 Mass. 104, remarks, that where, in the courts of chancery in England, it has been determined, that if one man purchases land in the name of another, and pays the money, a trust results, which is not affected by the statute, yet it must be always understood to be in cases where the parol evidence is not inconsistent with the deed. And in *Goodwin* v. *Hubbard*, 15 Mass. 216–18, the same judge says, there are some cases that look the other way, especially *Gascoyne* v. *Thwing*; but it is not clear that the question of parol proof

came directly before the court in that case — the object being to show that there might be a trust without writing; and seems to rely, much, on Roberts, who says, p. 219, " that parol evidence has always been ‚rejected, on the ground of its contradicting the instrument." It will be found that Sugden relies much on the same authorities cited by the chancellor, especially on *Gascoyne* v. *Thwing*, though he cites many others.

We insist that, in a case where a deed is given with the usual formalities, acknowledging the consideration to have been received of the grantee, a claim set up by a third person, as a resulting trust, to be proved by parol, is not within the exception of the statute of frauds. And in this we are sustained by a long course of decisions in Massachusetts. *Storer* v. *Batson*, 8 Mass. R. 431; *Bank of Northampton* v. *Whiting*, 12 Mass. 104; *Goodwin* v. *Hubbard et al.*, 15 Mass. 211. These, it is true, are decisions at law; but courts of law and equity are equally bound by the statute of frauds. Any parol evidence which would, in a court of equity, establish a resulting trust, would make it the duty of a court of law to sustain such trust, in either trespass or ejectment.

The exception in the statute is: " That where any con-
' veyance shall be made, of any lands, by which a trust or
' confidence shall, or may, arise or result by implication or
' construction of law," &c. — " in every such case, such
' trust or confidence shall be of like force and effect as the
' same would have been, if this statute had not been made."
But what was the " force and effect" before the statute of 29 Car. 2, was enacted? It had long been decided that parol proof could not be admitted to contradict, or vary, a deed, or other written instrument.

" By the express words of the statute of frauds, all result-
' ing trusts, and trusts by operation of law, are left on their
' original grounds. Such constructive trusts, therefore,
' whenever they spring out of facts, or the equitable relation
' of the parties to each other, may, by virtue of said excep-
' tion, be set up by parol evidence; but where the relative
' obligations and rights of parties are stipulated and adjusted
' by written instruments, the instruments must still, speak for
' themselves, by expression or implication, and no extrinsic

WINDSOR,
*February*,
1843.

Pinney *et al.*
*v.*
W. & C.
Fellows.

WINDSOR,
*February*,
1843.

Pinney *et al.*
*v.*
W. & C.
Fellows.

'or collateral proof ought to be received to engraft any addi- 'tional trusts upon the deed, by proof of intention, unless 'upon ground of fraud or circumvention." Roberts on Frauds, 9, 12.

The doctrine of resulting trusts, as established by parol proof, has been favored in none of the states except New York ; and, there, Chancellor Kent is reported to have said, (*Boyd* v. *McLean*, Johns. Ch. R. 587) " If the question were *res integra*, he should feel strongly inclined against the doctrine of such trusts, and the admission of parol evidence in their support."

We insist that, according to the true construction of the exception in the statute, relied on by the orators, the resulting trust is to be enforced only against the trustee, or one standing in the same relation, as an heir, devisee, or voluntary grantee, and those who had actual notice, and purchased in fraud thereof. And this bill is drawn on that ground, and charges notice, in fact, in the defendants, which is denied by them, and not proved.

It seems impossible that this doctrine of resulting trusts, so variant of our registry system, can so commend itself to the courts that they would adopt it, on any other principle than that of full notice. And it is to be remarked that no adjudged case has carried it farther than to the party himself. The statute says nothing of the trust being binding, with notice even, and implies that the party thereto, only, can be bound.

It cannot be admitted that it was the intention of the legislature that such a secret, unpublished, underhand trust, resting in parol, should descend with the title, through a long chain of vendors and vendees, or *bona fide* attaching creditors and their assigns, until the *cestui que trust* shall choose to assert his claim. And if it cannot extend *ad infinitum*, where shall it stop ? Why not with the first innocent purchaser or *bona fide* attaching creditor ?

III. Was the possession of the oratrix and her husband, at the time of the attachment, of such a character as to put the defendants upon inquiry, so that they are chargeable with constructive notice ?

The legal possession was by the husband, and not by the wife — the claimed *cestui que trust*.

The possession of Martin N. Pinney might well have been taken to be under W. H. H. Pinney, who held the record title, and who was under obligation to support his aged parents, who might be presumed to be occupying the premises under his execution of that obligation.

WINDSOR,
February,
1843.

Pinney et al.
v.
W. & C.
Fellows.

The opinion of the court was delivered by

BENNETT, J. — The object of this bill is the protection of a *trust estate*, of which it is claimed Elizabeth N. Pinney, the wife of Martin Pinney, is possessor ; and the important inquiry is, has she established in herself such a trust interest as can, upon the principles of chancery law, be recognized, protected and enforced against these defendants ? This case, in principle, is somewhat important ; and with the aid of a very full argument, we have endeavored to arrive at a just conclusion.

At law, the legal existence of the wife is suspended, or rather consolidated with the person of her husband, during the marriage ; and from this supposed union almost all her disabilities at law follow. The civil law never adopted this fiction ; but it permitted the husband and wife to have *separate* estates and interests. So, in courts of equity, the husband and wife are, for many purposes, regarded as distinct persons, capable of distinct and separate interests. But, as her person, at law, by fiction, is merged in that of her husband, she must look to courts of equity for the protection of her separate interests.

It appears from the testimony, that in 1824 the husband of Mrs. Pinney was very intemperate, poor, and destitute of the means of providing a support for himself and family. In this situation, she made a contract with Asa Aikens for the purchase of the premises, the title to which is now in question ; and she made it professedly in her own right, and for her separate interest, that she might have a home for herself and children ; and declined to have the deed given to her husband on account of his embarrassed situation. It was understood between her and Mr. Aikens, at the time the contract was made, that Mrs. Pinney was to pay for the place out of her own means, a portion of which she expected to inherit from her mother's estate. When Mr. Aikens executed his deed, in March, 1824, by an agreement between

WINDSOR,
February,
1843.

Pinney et al.
v.
W & C.
Fellows.

Mr. Aikens, Mrs. Pinney, and her son, Wm. H. H. Pinney, it was given to the son, in the usual form, for a consideration, as expressed in the deed, of 400 dollars, under a verbal agreement, on the part of the son, that he would hold the premises for the sole and separate use of his mother. Upon the execution of the deed, Mrs. Pinney paid one hundred dollars of the consideration money, and the son gave his notes to Mr. Aikens for the balance and a mortgage on the place to secure them, but with the understanding that his mother would furnish the means to pay the notes. It is evident from the testimony that the $100, paid by Mrs. Pinney, upon taking the deed, was her money, obtained by way of loan from her brother for this express purpose. Mrs. Pinney afterwards paid about one hundred dollars on her son's notes, in boarding and nursing the aged father of Mr. Aikens; and we have no doubt, from the testimony, the balance of the notes were paid by Mrs. P. from time to time, from the moneys obtained from her mother's estate, and from her own personal earnings. The son testifies, expressly, that he never paid anything towards the land, unless it was by way of loan to his mother, and for which he has been paid by her. As the whole testimony shows old Mr. Pinney, during the whole time, to have been exceedingly poor and worthless, there can be no good reason to suppose that he could have furnished any part of the money.

But it is urged in argument, that, notwithstanding such may have been the facts, as to the manner in which Mr. Aikens received his pay for the land, yet, that the moneys and the earnings of the wife before the payment, vested, absolutely, in the husband, and became his property, and, consequently, furnish no ground for creating a trust to the wife. But, in chancery, the husband and wife are distinct persons, and in a limited sense, may contract with each other; and it will always refuse its aid to the husband to obtain the possession of the separate property of the wife, unless it be upon a competent provision for her support. The husband is bound by the principles of the common law to yield the wife a competent support, and this duty is not dependent upon the receipt of property by the husband from the wife; and if, after marriage, he shall, for sufficient reasons, contract with the wife that she may possess and enjoy *separately,*

property bequeathed to, or inherited by her, or such as she may be the *meritorious* cause of acquiring, equity will uphold such post-nuptial agreement, in cases in which the claims of creditors will not be prejudiced by so doing. *Hanning* v. *Style*, 3 Peere Wm's. 334; 1 Fonb. Eq. B. I. Ch. 2, §6, note (n.) ; 2 Story's Eq. 601. It would seem, that chancery would need no better reason for upholding a post-nuptial agreement, as between husband and wife, (which was intended to give a home to the wife and family,) than the entire worthlessness of the husband, and his neglect to discharge the marital obligations imposed upon him by law.

It is, however, argued, that there is no evidence that this trust estate in the wife was attempted to be created to her separate use, by the appropriation of the moneys of the wife, and the avails of her own earnings, by and with the husband's consent. But we think otherwise. In 1823, the husband and wife, under a contract between the wife and Mr. Aikens to pay rent, and in anticipation of a future purchase, went into possession; and in 1824 the contract of purchase was made. The deed was then made and put upon record. The one hundred dollars was then paid, and subsequently the residue of the consideration. The rent for 1823 was also settled. The husband and wife continued to live on the premises until after the attachments by the defendants, a period of more than thirteen years, without the payment of rent, and without any question of their right; after which they removed to one of their sons, on account of the husband's infirmities, and the inability of the wife longer to have the personal charge of him — the same son then taking charge of the premises. We can hardly conceive it possible, that the old gentleman should not have fully understood the manner in which a home had been provided for himself and family for so great a length of time. He well knew he had made no purchase himself, and that he paid no rent. He must have known his wife was boarding and nursing the father of Judge Aikens, a year or more, for which they were entitled to compensation; and it is highly reasonable to suppose he must have known his wife was in the receipt of moneys from her friends. We can not doubt the husband was fully advised of all that Mrs. Pinney had done in relation to this business. We hear of no dissent or

WINDSOR,
*February,*
1843.

Pinney *et al.*
*v.*
W. &. C.
Fellows.

Windsor,
February,
1843.

Pinney et al.
v.
W. & C.
Fellows.

dissatisfaction on his part; and, indeed, he joins with her in this bill.   We then find, as a fact proved, that all which was done by the wife, was done with the consent of the husband, and designed to create a trust for the separate use of the wife.   Though the *legal interests* in the consideration paid might have been in the husband, yet the wife, being the *meritorious* cause, by which the means of payment were provided, and these being appropriated to create the trust estate for the wife, by the husband's consent, though void at law, yet, still, in equity the arrangement should be upheld, if it can consistently be done.

This brings us to the question, whether a valid trust has been created in favor of the wife, and if so, whether it can be enforced against these defendants.   It is a familiar principle in equity law, that when one person purchases an estate in lands with his own money and takes the deed in the name of another, a trust results, by operation of law, to the person paying the consideration ; and such a trust is expressly excepted from the operation of the statute relative to the conveyance of lands, and of course may be proved by parol. It is said in argument, that, as the deed to the trustee expresses the consideration to have been received by the grantor from the trustee, it is not open to parol evidence to show it otherwise.   It is true, that there are authorities which countenance the idea, that if the consideration money is expressed in the deed to have been paid by the person to whom the conveyance is made, and there is nothing in the deed to create a presumption that the purchase money belonged to another, in such case, parol proof should not be received after the death of the nominal purchaser, to prove a resulting trust.   But this is not such a case.   Wm. H. H. Pinney, the nominal purchaser from Judge Aikens, is still living ; and though he is not a party to this bill, yet we have his deposition before us, which fully proves the trust.   Though it has been a matter of some controversy whether, after the death of the supposed nominal purchaser, parol proof alone is admissible against the express declaration in the deed, yet, even in that case, I think the better opinion is, that it may.   See Sugden on Vendors, 256–260, 10th ed. ; 2 Story's Eq. Jurisp. § 1201, note 2 ; *Lench* v. *Lench,* 10 Ves. 517 ; *Boyd* v. *McLean,* 1 Johns. Chan. 582 ; *Gascoyne* v. *Thwing et*

WINDSOR,
February,
1843.

Pinney *et al*
*v.*
W. & C.
Fellows.

*al.* 1 Vern. 366; Parol evidence has, in such case, been admitted to show the trust, against the answer of the nominal purchaser. In this the nominal purchaser admits the facts fully, from which the trust is implied; and, in such case, there is no danger from the adoption of such a principle. And I think, the law, in such case, is well settled, that the facts which create the trust may be shown by parol evidence, though it contravene the recitals in the deed. If, then, Mrs. Pinney had, at the time of the purchase, paid the full consideration money, the law, out of that fact, would have raised the trust. Though it has been sometimes questioned, yet it is now well settled, that a part payment of the consideration, at the time of the purchase, will charge the land with a trust *pro tanto*. *Bostford v. Burr,* 2 Johns. Ch. R. 410; *Ryal* v. *Ryal,* 1 Atk. 59; *Bartlet* v. *Peekersgill,* 4 East. R. 577, in note; and *Lane v. Diton,* Amb. 409. So far, then, as respects the one hundred dollars, a trust resulted to Mrs. Pinney against the nominal purchaser, which is out of the statute of frauds, and is a charge upon the land.

It is an important inquiry, whether a trust is created as to the residue, which fixes itself upon the land, as a valid trust between the parties to this suit. The parties did not rely upon the law of implied or resulting trusts, but there was an express agreement creating the trust. If the trust, attempted to be created, comes within the statute of frauds, it must fall. It cannot, in that event, be supported by parol evidence, however explicit it may be. The statute of 1797, by which the rights of the parties are to be governed, (Slade's Ed. p. 166) declares, "that all declarations and creations of trusts or confidences, of any lands, &c., shall be manifested and proved by some writing," &c., except such as arise by implication of law, or the same shall be utterly void. Our statute, in effect, is a copy of the 7th and 8th sections of the 29th Charles II.; and has been adopted by most of the states. The authorities under the statute of Charles II. are authorities for us. Is the trust, then, in this case, so *proved* and *manifested* as to take the case out of the statute? The statute does not require the trust to be *created* by writing. All that the statute requires is, that it shall be *manifested* and *proved* by writing. This has been the construction of the statute of Charles II. *Forster* v. *Hale,* 3 Ves. 696.

WINDSOR,
*February,*
1843.

Pinney *et al.*
*v.*
W. & C.
Fellows.

*Randall* v. *Morgan*, 12 Ves. 73. So it has been held in New York, under their statute, which is, in effect, a copy of the English statute. *Movan* v. *Hays*, 1 Johns. Ch. 342; *Steere* v. *Steere*, 5 Johns. Ch. 1. The question then arises, is the deposition of the nominal purchaser, drawn up, signed by him, and sworn to, fully admitting the trust, such a manifestation and proof of it in writing as to render the trust valid? In *Ryal* v. *Ryal*, 1 Atk.. 59, it was held that the admission of the trust, in the answer of the trustee, took the case out of the statute, or rather was a sufficient manifestation of the trust in writing. In *Ambrose* v. *Ambrose*, 1 Peere Wm's. 322, the declaration of the trust was not given by the trustee, till after the death of the *cestui que trust*; yet it was held binding upon the widow of the trustee. In *Lane* v. *Diton et al.*, Amb. 409, it was held to be clear law, by Lord Hardwick, that, if the trustee lays out trust money in land, the court will charge the land with it, upon the admission of the trustee. In that case, it appeared from papers in the hand writing of Diton, and signed by him, who had been permitted by the trustee to manage the trust stocks, that they had been sold, and the moneys laid out, from time to time, in the purchase of land. The land was charged with the trust money, without any writing creating the trust. We think, then, that the deposition of the trustee signed and sworn to by him, fully and clearly setting out the terms of the trust, is a sufficient manifestation of it, in writing; and had the bill been against the nominal purchaser, chancery would have enforced the trust against him, upon the answer.

The question then arises, in what light do these defendants stand? Are they in a better situation than the nominal purchaser? Wm. H. H. Pinney, in 1834, had, upon a nominal consideration, conveyed to J. N. Pinney; and in 1836, the latter, upon a like consideration, conveyed to Haskell Pinney; but both deeds were executed without a seal and are unrecorded; and both were given with the consent of Mrs. Pinney, and with the express agreement that the lands should be held upon the same trust as when in the hands of William. The defendants, after the pretended conveyance from Wm. to J. N. Pinney, attached the lands as the property of William, and in June 1836, caused them to be appraised off, on their execution against William; and

Windsor,
February
1843.

Pinney *et al.*
*v.*
W. & C.
Fellows.

the object of their action of ejectment is, by means of this title, to get the possession of this land. Mrs. Pinney and her husband had been in the actual and exclusive possession of the premises, for about thirteen years previous to the attachment, managing them as their own. William H. H. Pinney never was in possession, and had no concern in their management. Though he had the legal title, and a seizin in law, yet, in equity, the *cestui que trust* was seized of the freehold, accompanied with an actual seizin.

It is a general rule, both at law and in equity, that the open and exclusive possession of land is notice to a purchaser of the possessor's title. In *Rublee* v. *Mead*, 2 Vt. R. 546, the rule was applied at law, and effect was given to an unrecorded deed by reason of this principle, against an attaching creditor. There was no attempt, in that case, to prove an actual notice. The case of *Griswold* v. *Smith*, 10 Vt. R. 454, is to the same effect. Possession is there called *constructive* notice. The general rule is, that whatever is sufficient to put the party upon an inquiry is good notice in equity. *Smith* v. *Low*, 1 Atk. 490; *Ferrars* v. *Cherry*, 2 Vern. 384; *Taylor* v. *Hebbert*, 2 Ves. 437; *Daniels* v. *Davison*, 16 Ves. 250; *Allen* v. *Anthony*, 1 Meriv. R. 262; 2 Story's Eq. Jurisp. 389, § 400. In *Plumb* v. *Flint*, 2 Anstr. 438, Lord Chief Baron Eyre says, constructive notice cannot be rebutted; and in *Daniels* v. *Davison*, the Lord Chancellor says, possession *is notice* to a subsequent purchaser of the equitable rights of the tenant. The case of *Pritchard* v. *Brown*, N. H. R. 397, is strongly in point. The *cestui que trust* was in the open and exclusive possession of the land, and it was held this was sufficient to charge the purchaser with notice of his trust estate, and avoid the deed of the trustee. If, in such case, the purchaser does not inquire, it is *crassa negligentia;* and he shall be presumed to be cognizant with the facts. 2 Fonb. Eq. 151, and note *m.*

Though the defendants, in their answer, deny all notice of the equitable claims of Mrs. Pinney, at the time of the attachment, yet this cannot avail them. Her possession is, in effect, notice, *per se*, in equity, of her equitable estate; and the same consequences flow from it as would flow from an actual notice, unless it be as to guilt. *Sheldon* v. *Cox*, Amb. 626. Besides, notice, in point of fact, of her equitable

WINDSOR,
February,
1843.

Pinney  *et al.*
*v.*
W. &. C.
Fellows.

claims, at the  time the defendants extended their execution on  the  land, is not denied in the answer.   If it was impor- tant, it might well  be inquired, whether the  defendants can claim to stand as purchasers before that date ; and if not, as notice is alleged in the bill, and not denied in the answer, it is to be taken that they were purchasers with actual notice.

It is said this is breaking in upon our registry act, and that this is not to be done unless the  notice  is so clearly  proved as to make the  act  in  the  second  purchaser, fraudulent in fact.    But Mrs. Pinney has, in this case, an equitable estate in lands,  which is not required to  be *created*, in writing, or to appear upon the town records, where conveyances of lands are to be recorded.

So far as her claim can stand upon the ground of a result- ing trust, it  is expressly excepted out of the statute ; and as to  the  residue of her  claim, and, indeed, as to the whole, there  has  been  such a manifestation and proof of the trust, as to render it valid, though not *created* by deed, or in  wri- ting.   Why, then, should we be called upon to hold that **a** trust interest, which is not required to be recorded or even *created* in writing, may be defeated by a  purchase from the trustee, and that, too, in a case in which the purchaser has implied or  constructive notice ?   See *Pratt* v. *Bank of B.* 10 Vt. R. 293.   To give such effect to the registry act, would be, indeed, to  call it in to aid in  the  protection of fraud, rather than in its prevention.   In *Rublee* v. *Mead*, 2 Vt. R. the person  in  possession holding an unrecorded deed, pre- vailed against an after attaching creditor of his grantor, upon no other evidence of  notice but what arose from the posses- sion of the grantee.   In *Wright* v.  *Bates & Niles*, 13  Vt. 350, the orator had conveyed to Bates, by an absolute  deed, which was put on record, but which in fact, was but a secu- rity for a loan.   Wright continued in possession, as before ; and while thus in possession, Bates, for a valuable consider- tion, conveyed to Niles.   Though Bates had a perfect title of record, yet Wright was let in to redeem, even  against Niles. An equitable interest in  lands was there protected in chan- cery, against a subsequent purchaser, without notice, though created by means of a parol agreement with the accompany- ing circumstances of that case.

It has been urged in argument, that, in  this case,  there

Windsor,
February,
1843.

Pinney et al.
v.
W. &. C.
Fellows.

was no such possession as should put the defendants upon inquiry. The fact that Mrs. Pinney and her husband first went into possession under a contract to pay rent to judge Aikens, can have no effect. There is no evidence that there ever was any written lease, much less that there was one upon record. Upon the execution of the deed to the trustee in 1824, the same was put upon record. This was notice of the determination of the tenancy that might have been inferred to have existed between judge Aikens and those in possession, from the occupancy. So far as the possession is to have the effect of notice, it is immaterial whether the possession was in the husband and wife, or technically in the husband alone. The wife had the equitable estate, and was, in equity seized of it in her own right, and the husband was in, under her. Neither was it of any account that the trustee was the son of the *cestui que trust.* This can have no operation upon the rule of law as to the effect of possession, nor excuse subsequent purchasers from enquiry. The chancery doctrine, as to the protection of trusts generally, is, that where a purchaser is bound to make inquiry, and he neglects it, he takes the property, subject to the trust, in the same manner as he would have done if he had had positive notice of the *cestui que trust* interest. I see no reason why the same principle may not well govern this case, notwithstanding our registry act. The possession of Mrs. Pinney and her husband, had been open, exclusive, and continued, for about thirteen years previous to the attachment, and the defendants are chargeable with the consequences of notice of the trust estate. The defendants, then, standing as privies in estate with Wm. H. H. Pinney, affected with notice, must stand or fall with him.

The result is, the decree of the chancellor is reversed, and the cause is remanded to the court of chancery, with instructions to enter up a decree, that the defendants, and each of them, be perpetually enjoined from further prosecuting their action of ejectment, set up in the bill ; and that they quit-claim, for themselves and heirs, all right and title to the premises, to the said Elizabeth N. Pinney and her heirs, within six calendar months, from this date, and also pay the oratrix, Elizabeth N. Pinney, her costs in this court, and, also, in the court of chancery, by such time as the chancellor shall fix.