HENRY BARTLETT, PLAINTIFF AND APPELLEE, V. ED-WARD BARTLETT, ADMINISTRATOR, AND JAMES ROBERTS, ET AL., HEIRS-AT-LAW OF ELIZABETH BARTLETT, DECEASED, DEFENDANTS AND APPELLANTS.

Equity: TITLE TO REAL PROPERTY: HUSBAND AND WIFE. B. bought a one-third interest in a nursery business from H. Bros., giving them in payment therefor his promissory note for nearly fourteen hundred dollars, at one year, with interest. Some months thereafter a misunderstanding arose between the partners B. and H. Brothers, whereupon B. left the business to the sole care of the H's, but there appears to have been no formal dissolution of the partnership or settlement between the partners.

There were some debts outstanding against the partnership. Repeated attempts and efforts were made on the part of B. to effect a settlement with the H's, but without avail. Pending this condition of things, B. bought and paid for, out of his own means, several pieces of real estate, and as he expressed it, "For the purpose of scaring Captain Hill into a settlement," had the deeds to said real estate made to his wife. Afterwards there was an arbitration of the partnership and nursery business between B. and the H's, and about fifteen hundred dollars found due the latter, which was paid, the title to said real estate still remaining in E. B., the wife. She died intestate, leaving no child, father or mother, but leaving brothers and a sister, who are the heirs-at-law, defendants and appellants in this action. Action by B. against the heirs-at-law of E. B., for the purpose of declaring a trust in said lands. On appeal, *Held*, That having thus placed his property for the purpose of hindering and delaying his creditor, a court of equity can grant him no relief.

THIS was an action brought in the district court of Thayer county, by Henry Bartlett, who, in his petition claiming title to certain real estate, set up that Elizabeth Bartlett, now deceased, was his wife, that she died in November, 1878, and that there were no children born unto them, having no father or mother living, and that James Roberts and others were brothers and sisters of deceased; that at the date of her death she held deeds to said property; that she never purchased the same, but that plaintiff purchased and paid the consideration therefor; that said deeds were made to said Elizabeth to hold in trust and for use and benefit of plaintiff, etc.; and praying for a decree accordingly. Decree below in his favor by WEAVER, J., and defendant's appeal.

*O. H. Scott* and *A. R. Scott*, for appellants.

When the facts which tend to show a resulting trust in a person also show a contrivance of such person to hinder, delay, or defraud his creditors, no trust will result from such fraudulent transactions, or be regarded in a court of equity. *Orton v. Knab*, 3 Wis., 510. *Tipton v. Powell*,

2 Coldw. (Tenn.), 19. *Towlks v. Harris*, Central Law Journal, vol. 5, 181. Where, with an intention to defraud or delay creditors, a voluntary conveyance is made, no trust arises which the fraudulent grantor can enforce in equity. *Burleigh v. White*, 64 Maine, 23. *Eyre v. Eyre*, 19 New Jersey Eq., 42. *Vicks v. Flowers*, 1 Murph. (N. C.), 321. *Trimble v. Doty*, 16 Ohio St., 131. *Robinson v. Robinson*, 17 Ohio St., 483. *Tremple v. Barton, Jr.*, Ohio, 423. Perry on Trusts, 133, secs. 164–5. *Blont v. Casten*, 47 Ga., 534.

*Colby & Hazlett*, for appellee, cited: 1 Perry on Trusts, sec. 143. Hill on Trusts, p. 108. *Kellogg v. Wood*, 4 Paige Ch., 579. *McGoun v. Knox*, 21 Ohio State, 551. *Taylor v. Taylor*, 4 Gilm., 203. *Guthrie v. Gardiner*, 19 Wend., 414. *Jackson v. Matsdorf*, 11 Johns., 91.

COBB, J.

No doubt the law is correctly stated by Mr. Perry in his work on trusts and trustees, in the following words: "Where, upon a purchase of property, the conveyance of the legal title is taken in the name of one person, while the consideration is given or paid by another, the parties being strangers to each other, a resulting trust immediately arises from the transaction; and the party named in the conveyance will be a trustee for the party from whom the consideration proceeds." "But," (says the author of the same book) "if the purchaser take the conveyance in the name of a wife, or child, or other person, for whom he is under some natural, moral, or legal obligation to provide, the presumption of a resulting trust is rebutted, and the contrary presumption arises, that the purchase and conveyance were intended to be an advancement for the nominal purchaser. The transaction will be regarded *prima facie* as a settlement upon the nominal grantee, and if the payer of the money claims a resulting trust, he must rebut this

presumption by proper evidence." In the case at bar, there is no room for doubt that the real estate in question was purchased by and paid for with the money of the plaintiff, and the title placed in the wife, now deceased, by his direction. These facts, as we have seen, raise the presumption of an advancement. Is that presumption overcome by competent testimony?

From the record before us, it is impossible to say whether the plaintiff's own deposition was received in evidence by the court or not. Its taking was objected to by defendants. It was taken nevertheless, and the objection does not seem to have been renewed at the hearing. Had it been, the deposition must have been excluded, as the defendants were defending as the representatives of a deceased person. Rejecting the deposition of plaintiff, there is, as we think, no evidence at all sufficient to overcome the presumption of advancement. In his deposition he testifies to sufficient probably to overcome such presumption, but at the same time he states as his reason and purpose in placing these titles in his wife's name, "to try to scare Captain Hill into a settlement." In his cross examination he says: "I had it deeded to her because I could not get a settlement out of Captain Hill. He was running the business in his own name for two years after I went out of the business, and I did not know what he was doing, and I wanted a settlement." The deponent puts this in various ways in the course of his deposition, all about to the same effect; he also stated his object in making this disposition of his property to some other witnesses out of court, who were permitted to state the same in their respective depositions. There was also a special finding of the court on this subject. These statements and findings, viewed in the light of the testimony of the other witnesses, all on the part of plaintiff, amount substantially to this: Some two or three years previous to these conveyances to the deceased, plaintiff had bought into a nursery business with Messrs. Hill

Brothers, giving them for the share purchased his note for about fifteen hundred dollars, which remained unpaid at the time of these transactions. Some months after said purchase, plaintiff conceived the idea that he had been defrauded, and went out of the concern, leaving Captain Hill to the sole management of the business. Whether the plaintiff's name continued to be used as a partner in the nursery business after he "went out" does not appear, but it is presumed that it did. There were certain debts owing by said firm when plaintiff bought into it, upon which judgments were afterwards rendered, which were in force and unsatisfied at the date of these transactions. Whether any partnership debts had been incurred by Messrs. Hill while the name of plaintiff was still connected with the business does not appear, but it is evident that plaintiff feared that there had been. Witness the following from his deposition:

"I stated in my examination that I had it deeded to her because I could not get a settlement out of Capt. Hill. He was running the business in his own name for two years after I went out of the business, and I did not know what he was doing, and I wanted a settlement.

"Q. How did you intend to scare Capt. Hill into a settlement by taking the deeds to your wife? What effect would that have?

"A. I thought may be it would bring him to some settlement."

Some time after the real estate in question was purchased and the deeds taken in the name of the wife of the plaintiff, the plaintiff and said Captain Hill submitted their matters of difference to arbitration; the arbitrators found the plaintiff indebted to Capt. Hill in the sum of fourteen hundred ninety-three dollars and forty-two cents, which amount was afterwards paid, partly in land and partly in a note secured by a mortgage on other lands.

Thus we see from the plaintiff's own showing that, be-

Bartlett v. Bartlett.

ing considerably indebted to Hill, he sought to deceive him as to the amount of his (plaintiff's) property, and thereby induce him to settle.

The law as stated by the author above cited is that: "If a purchaser and payer of the money take the conveyance in the name of a wife or child, for the purpose of delaying, hindering, or defrauding his creditors, the conveyance is void, or a trust results, which the creditors can enforce to the extent of their debts."

It is not the duty of a court of equity to make nice distinctions for the purpose of saving a party from the consequences of his own fraudulent acts [I use the words in their legal and not in their moral sense] nor can they do it without removing those landmarks which have been found necessary to the security of property. The plaintiff sought to do that which, to call it by the softest name possibly applicable to it, was deceitful and unfair toward his creditor; was intended to deceive and mislead, if not to hinder and delay him, in the language of the law. In so doing he has placed his property where equity cannot follow it. In other words, having for such a purpose placed the title where it is, that purpose being presumably accomplished, he cannot be heard to call upon a court of equity to place him where he would have been, in respect to this title, had no such deceitful course been pursued.

In our view, there is not sufficient evidence to sustain the findings or decree of the district court. The decree is therefore reversed and the cause dismissed.

JUDGMENT ACCORDINGLY.