MARY E. HUDSON *vs.* GEORGE W. WHITE *et als.*

A resulting trust, or one arising by operation of law independent of any declaration by parties, is not within the statute of frauds, 29 Car. II. cap. 3, § 8.

The evidence required to establish a resulting trust must be full and clear.

A conveyance claimed to be in fraud of creditors is valid between the parties and avoidable only by creditors.

In equity proceedings the court found that A. paid for realty and took the title in his wife's name; that A. did not intend the realty to be a gift or advancement, and that the respondents, holders of the realty, were not *bonâ fide* purchasers for value without notice.

*Held*, that resulting trust existed in favor of A.'s heirs.

BILL IN EQUITY to establish a trust. Heard on bill, answer, and proofs.

*October* 24, 1891. TILLINGHAST, J. This is a bill in equity brought by the complainant as one of the children and heirs at law of Henry R. Mathewson, deceased, to establish and enforce a resulting trust in certain real estate in the town of Johnston, R. I., which, it is alleged, was purchased and paid for by said Henry R. Mathewson, but the deeds of which were taken in the name of his then wife, Marcy W. Mathewson, although, as complainant contends, in trust for himself.

The bill shows that said Henry R. Mathewson was twice married; that by his first wife he had six children, of whom the complainant is one; that three of the others are still living, together with issue of the other two, who are deceased; that said Henry married, for his second wife, Marcy W. Kelly, who has deceased, leaving one child, the respondent, Eleanor Rand.

The bill further shows that said Henry R. Mathewson, in his lifetime, purchased at different times certain tracts of land in Olneyville, in said Johnston, paying for the same with his own money, but taking the deeds thereof, excepting those of certain interest in the Kelly homestead estate, in the name of his wife, Marcy W. Mathewson; not with the intent, however, that such real estate should belong to her absolutely, as a gift or advance-

ment, but that she should merely hold the legal title thereof temporarily for the benefit and under the control of said Henry R. Mathewson, for convenience in the management and for the protection of the same; that prior to said purchases said Henry went to California to engage in business, leaving his family in said Johnston; that at the time said purchases were made, he then being in business in California, he caused said real estate, with the exception of a part of the Kelly homestead, to be conveyed to his said wife in order that she might the better attend to the care and management thereof as his agent, and for his sole use and benefit, and also to protect the same from any possible attachment during his absence, he then having a controversy with certain parties in Rhode Island whose claim and demands upon him, if any they had, he was able to pay or satisfy out of other property, and which controversy was in fact afterwards settled ; that it was well understood and agreed between said Henry and his said wife, at the time said conveyances were made to her, that the deeds were taken in her name with the intent and purposes aforesaid, and that if said Henry should die while his said wife held the legal title to said estate, the same should belong to his children, precisely as though he held the legal title thereto ; that in October, 1875, said Henry conveyed to his said wife all the interest which he then had in the Kelly homestead estate without any consideration, and for convenience merely, as aforesaid.

The bill further shows that said Marcy, in her lifetime, frequently acknowledged and declared that she held said lands only for the reasons aforesaid; that they belonged to her husband; that these facts were well known to the respondents, Edwin D. Rand and Eleanor Rand ; that said Henry always treated said real estate as his own ; that he deceased intestate in November, 1881 ; that said Marcy also deceased intestate shortly afterwards, and that the legal title to said estate thereupon devolved upon said Eleanor Rand.

The bill further shows that the complainant was always permitted by her father in his lifetime to occupy a part of said estate as her home, rent free, and that, in recognition of her rights, said Marcy, and said Edwin D. and Eleanor Rand, allowed her to continue in such occupancy in the same manner after her father's decease, and that she still occupies the same as her home.

The bill further shows that said Edwin D. and Eleanor Rand, by deed of August 21, 1888, conveyed the legal title to said real estate to the respondents, George W. White and Nathan B. Harris, who have executed a mortgage back to said Eleanor Rand; that prior to said conveyance the complainant gave notice in writing to said White and Harris of her interest in said property, and that they took said conveyance with full knowledge of her claim thereto; that they refused, however, to recognize her right therein, but, on the contrary, claim to be seized of the same in fee simple, and have entered into possession thereof and collected and received the rents and profits of the same, and refuse to account with the complainant therefor.

The bill prays that said White and Harris may be decreed to hold said estate in trust for the complainant and the other children of said Henry R. Mathewson, excepting said Eleanor Rand; that they may be ordered to convey to the complainant the legal title to her share of said estate, and for an account.

The answer of the respondents, Eleanor and Edwin D. Rand, and George W. White and Nathan B. Harris, denies all of the material allegations contained in said bill excepting as to the relationship of the parties as therein set forth, and excepting also as to the conveyance to said Marcy of the land in question, and the conveyance by said Edwin D. and Eleanor Rand to the respondents White and Harris. And it sets up and avers that said land was purchased and paid for by said Marcy with her own money, that she was seized of the same as her own property and estate in fee simple, that she did not hold said land in trust for her said husband, and that, upon her decease, it vested in said Eleanor Rand as her sole heir at law.

It also sets up that the respondents, White and Harris, were *bonâ fide* purchasers for value, without notice, of said estate, excepting that they did have notice of a small claim that complainant had as heir at law of her father in the Hannah Kelly homestead estate, and it admits her interest therein to that extent.

The answer also sets up § 7 of the statute of 29 Car. II. cap. 3, known as the " Statute of Frauds and Perjuries," in bar of said suit.

The case is before us on bill, answer, and proofs.

In order to establish a resulting trust in favor of the complainant, in any of the land set out in the bill, it is incumbent upon her to prove, *first*, that said Henry R. Mathewson paid the purchase-money therefor; *second*, that he did not intend the conveyance thereof to his wife to operate by way of advancement (there being a presumption that it was so intended when a husband pays for real estate and takes the deed to his wife; 2 Pomeroy Equity Juris. § 1039; 10 Amer. & Eng. Encyc. Law, 18, and cases cited; *Bartlett* v. *Bartlett*, 13 Neb. 456; 2 Story Eq. Juris. § 1204; Hill on Trustees, 97, 98); and, *third*, that the respondents, White and Harris, were not *bonâ fide* purchasers for value of said land without notice of the complainant's claim.

Before considering the evidence adduced by the complainant in support of these propositions of fact, it is proper to consider an objection raised by the respondents to the admissibility of parol evidence to establish a resulting trust, and the defence of the statute of frauds. Their contention is that, under § 7 of said statute, declarations or creations of trust or confidence, if proved by verbal evidence only, are utterly void and of no effect; and that, as the respondents have in their answer set up this statute in defence, it is a complete bar to the complainant's bill, there being no sufficient written proof or manifestation of any declaration of trust concerning the land in question in the evidence offered. In support of this position they cite *Taft* v. *Dimond*, 16 R. I. 584; Bispham on Equity, 4th ed. § 97, and cases cited; and *Cook* v. *Barr*, 44 N. Y. 156, 159.

In *Taft* v. *Dimond* the complainant's claim was based on the ground of an *express* trust, any trust by implication being inconsistent with the covenant of warranty in the deed. Hence the court held, and rightly, of course, that the claim was within said § 7 of the statute of frauds.

In the case at bar, however, the complainant's claim is not based upon any *declaration* of trust, but upon a trust which arises by operation of law independently of any declaration whatever, viz., a *resulting* trust. And such a trust is expressly excepted from the operation of the statute of frauds by § 8 thereof, which enacts as follows: "Provided always, that where any conveyance shall be made of any lands or tenements by which a trust or con-

fidence shall or may arise or result by the implication or construction of law, or be transferred or extinguished by an act or operation of law, then, and in every such case, such trust or confidence shall be of the like force and effect as the same would have been if this statute had not been made; anything hereinbefore contained to the contrary notwithstanding."

The other authorities cited by the respondents in support of their position also relate to express trusts, and hence are not pertinent to the question before us.

The statute of frauds being in force in this State, *Taft* v. *Dimond*, 16 R. I. 584, and resulting trusts being thus excepted from the operation thereof, *Hoxie* v. *Carr*, 1 Sumner, 173, it follows that said statute cannot be interposed as a bar to the present suit, and that the objection to the admissibility of parol evidence is not sustainable. That the transaction out of which a trust results may be proved by parol is familiar law. See 1 Perry on Trusts, 4th ed. § 137, and cases cited in note 1; Bispham on Equity, 3d ed. § 83, and cases cited in note 1; *Livermore* v. *Aldrich et als.* 5 Cush. 431; 10 Amer. & Eng. Encyc. Law, 27, and cases cited; *Whitten* v. *Whitten*, 3 Cush. 191; *Pinney et al.* v. *W. & C. Fellows*, 15 Vt. 525, 538; *Boyd* v. *McLean et ux.* 1 Johns. Ch. 582; *Watson* v. *Thompson*, 12 R. I. 466. It is also well settled at the present time that "the death of the nominal purchaser cannot affect the admissibility of parol testimony, whatever effect it may have upon its weight." Perry on Trusts, § 138, and cases cited in note 3; *Finch* v. *Finch*, 15 Ves. Jun. 43, 50; Bispham on Equity, § 83, and cases cited in note 3. The defence of the statute of frauds, therefore, is not well founded.

Upon a careful examination of the evidence submitted, which is quite voluminous, we think it clearly establishes each of the propositions aforesaid, viz.: That said lands were purchased and paid for by Henry R. Mathewson; that the deeds thereof were not taken in his wife's name by way of gift or advancement on the part of her husband, and that the respondents, White and Harris, were not *bonâ fide* purchasers for value, without notice of complainant's claim.

As to the first proposition, the evidence shows that said Henry had money to invest; that he was desirous of owning and improv-

ing real estate in Olneyville; that he made the purchases himself, in one case giving a note secured by mortgage for a part of the purchase-money, which he subsequently paid, and had the mortgage transferred to himself; that he sent home the money, $1,200 in gold, with which to pay for a tenement house built upon the premises; and that he treated said property as his own, and intended it for the equal benefit of all his children in case of his decease.

It also shows that his wife did not have money of her own with which to make said purchases.

As to the second proposition, the evidence shows that he was engaged in speculative enterprises in California; that he apprehended some litigation concerning a claim against him in Rhode Island, and that for the sake of convenience in the management of said estate, he living in California and his wife living in Olneyville, and for security in case of business reverses as well as immunity from possible attachment, he preferred to hold said property in the name of his wife, instead of holding it in his own name.

The evidence also shows that his wife always spoke of and considered the property as belonging to her husband; that it was against her wish that the title thereof was taken in her name; that she was anxious for him to permanently return to his home in Olneyville and have it reconveyed to him, and that she repeatedly assured the complainant and others of the children of said Henry that, in case of his death while the property stood in her name, they should all inherit or share the same precisely as though it stood in the name of their father, as it rightfully belonged to him.

As to the third proposition, the evidence, while more conflicting than that upon the other points, yet on the whole strongly preponderates in support thereof. It shows that negotiations for the purchase had been going on for nearly a year; that White and Harris had long been familiar with the property and knew that the complainant had occupied a tenement thereon for many years, rent free, and that they had express notice, both from the complainant and also from her counsel, Judge Spink, before they purchased the property, that she claimed an interest therein.

And that this notice did not simply relate to her small fractional interest in the Kelly homestead, as is earnestly contended by the

respondents, is clearly shown by her refusal to sign the quitclaim deed which as to that estate she had agreed to sign for $75, when she ascertained upon reading the same that it included, not only her said small fractional interest in that property, but her interest in the entire Mathewson estate as well.

Furthermore, the stipulations in the note and mortgage given by White and Harris for a part of the purchase price show that they not only knew of, but carefully provided against, all loss and damage which might arise from a failure to get possession and a perfect title.

If the complainant succeeds in her suit, they lose nothing; their mortgage note will be void, and the Rands must return to them the $3,050, which they have advanced on the property.

The transaction, as it stands, is simply an agreement to sell, contingent upon the grantor's title proving to be good.

The Rands evidently so understand it, for the deeds are lying in escrow to await the result of the complainant's suit to establish her claim to the property.

But the respondents contend that the complainant has been guilty of laches, and hence is not entitled to relief; and in support of this position they cite from 1 Perry on Trusts, § 141, as follows: " Courts will not enforce a resulting trust after a great lapse of time or *laches* on the part of the *cestui que trust*, especially when it appears that the supposed nominal purchaser has occupied and enjoyed the estate."

This is doubtless good law, but so also is the last part of the same section, which reads as follows: " Any excuse for delay that takes hold of the conscience of the chancellor, and makes it inequitable to interpose the bar, is sufficient."

We think there is sufficient excuse for the delay of the complainant in instituting her suit in this case.

She had been permitted for many years, both before and since the death of her father and stepmother, to occupy a tenement on the premises, rent free.

Since her father's death she has occupied it under a claim of right, as one of his children.

She asserted her claim to the property immediately on ascertaining that it was about to be sold, and in time to enable the respond-

ents, White and Harris, to rescind their original contract for the purchase thereof and make a new one, which they did, in manner following : —

Know all men by these presents, That whereas the sale of certain property was heretofore agreed to be made by Edwin D. Rand and Eleanor Rand, his wife, to George W. White and Nathan B. Harris, situated in the town of Johnston, State of Rhode Island, and on account of a claim of an interest having been made by Mrs. Mary Hudson, said sale has not been consummated,

Now therefore it is agreed that in consideration of the payment of three thousand and fifty dollars and the execution of a mortgage on said property for three thousand dollars balance of payment coming to said Rand and wife, payable as to principal as soon as said claim of Mrs. Mary Hudson is adjudicated to be groundless or otherwise disposed of. In the mean time, interest on said three thousand dollars mortgage at 8 per cent. is semi-annually to be paid on said mortgage to said Edwin D. Rand and Eleanor Rand, his wife.

Now, therefore, the said Edwin D. Rand and Eleanor Rand, his wife, hereby contract and agree, in case they fail to quiet title against the said Mrs. Mary Hudson within three years, that thereupon, upon the reconveyance to them of the above-described premises in good condition, reasonable damages by wear and tear excepted, that they will cancel and surrender the said three thousand dollar mortgage and repay the said sum of three thousand and fifty dollars and interest thereon at the rate of 8 per cent. per annum from date until repaid to the said George W. White and Nathan B. Harris.

In witness whereof the said parties have set their hands and seals this twenty-ninth day of September, eighteen hundred and eighty-eight.

EDWIN D. RAND.        (Seal.)<br>
MRS. ELEANOR RAND.    (Seal.)

Subscribed and sworn to before me this 29th day of September, eighteen hundred and eighty-eight.

J. B. TITUS, Notary Public.

Under this contract said White and Harris appear to be fully protected in case of the complainant's success in establishing her claim to the premises in question.

We do not think that the defence of *laches* can avail.

It is further contended on the part of the respondents that the claim which the complainant now makes is inconsistent with her previous conduct in relation to the premises, in that she has never claimed any portion of the rents thereof since her father's death. While this is doubtless a circumstance which should be weighed against her, yet we cannot say that it is by any means conclusive, in view of the fact that she was having the benefit of a portion of the premises, which, for aught that appears, considering the rights of the other children, may have been all that she considered herself entitled to.

The fact that she has paid rent once to the respondents, White and Harris, since they took possession of the premises, is also urged as a circumstance against her in this suit. We do not think it should be so considered. The circumstances connected with such payment very clearly show that it was not intended as a recognition on her part of their right to the same, as her landlord, but rather for the purpose of enabling her to continue in possession of her tenement for the time being, and until she could determine what course to pursue in regard to her interest in the premises. She had received a notice from White and Harris to quit her tenement in fifteen days. At the time of receiving this notice, she was about leaving for New York on business. Before going, however, she took said notice to her attorney, Judge Spink, and was advised by him what course to pursue in regard to the matter. Upon being assured by him that he would make arrangements to prevent her from being disturbed, for the time being, in her possession of the tenement, she went to New York, but while there received a letter from her attorney stating that they expected her to move that week. Fearing that unless the rent was paid she would be ejected from the tenement, she came home, called on White and Harris, and paid them twelve dollars, the amount of rent agreed upon, to December 1, 1888, and immediately returned to New York to complete her business there. As soon as this was done, she again returned home, refused to pay any more rent, and immediately commenced proceedings to establish her title to the estate. Under these circumstances the payment of rent amounted to nothing more than the buying of her peace until she could

institute proceedings to determine her rights. It should not therefore be construed as any admission on her part that she claimed no interest in the premises in dispute.

Another defence interposed against the maintenance of this bill is that, as it alleges that some of the deeds of the land in question were taken in the name of the wife of said Henry "in order to protect said real estate from attachment or levy, in litigation in which he was then engaged or with which he was then threatened, and to secure the same for his children," it shows a fraudulent intent on his part to deprive his creditors of their just claims and demands against him, and cannot therefore be sustained.

We think it is doubtful whether this allegation in the bill is fairly open to such a construction, as for aught that appears he was not insolvent, or without other means with which to pay his creditors. And we think it can hardly be said that the placing of a portion of one's property beyond the reach of attachment for debts, when one is solvent without such portion, is a fraudulent act.

But, however this may be, the purchase of the property in question in the name of the wife was a valid transaction, though done to secure it from attachment, because the claim referred to was afterwards settled and paid.

For " it is only when debts, either prior or subsequent to the conveyance, remain unpaid, that any question can arise concerning its validity." Bump on Fraudulent Conveyances, 295 ; *Harvey* v. *Varney et al.* 98 Mass. 118, 120.

A conclusive answer, however, to the point which the respondents make is, that no one but a creditor can set up this defence. For as stated by the court in *Springer* v. *Drosch*, 32 Ind. 486, 488, " if there be an intent to defraud a particular person ·or class of persons, as to that person or class of persons the sale would be void ; but as to all others the fraud would be without injury to them, and of such a fraud they could not avail themselves. As it was ruled by the Supreme Court of Massachusetts, the transaction is not illegal. The most that can be urged against it is, that it is voidable by creditors. But it is valid between the parties, and is binding as to every one except he be a creditor. *Fairbanks* v. *Blackington*, 9 Pick. 93." See, also, *Gardner* v. *Commercial Na-*

*tional Bank*, 13 R. I. 155, 175; *Clemens* v. *Clemens*, 28 Wisc. 637. In *Harvey* v. *Varney*, *ante*, the court says : "In this Commonwealth, a long series of cases has established the rule that a transfer either of real or personal property, made with a view to defraud the creditors of the grantor, although the grantee has participated in this intent, is good between the parties, and void as against creditors only; or, to speak accurately, is voidable by creditors at their election. If no creditors intervene, the conveyance stands." See, also, *Dyer* v. *Homer*, 22 Pick. 253; *Fitzgerald* v. *Forristal*, 48 Ill. 228.

We do not think that the defence of fraud can be sustained.

In arriving at the conclusions that we have, regarding the sufficiency of the evidence to establish a resulting trust, we have not been unmindful of the rule which requires that the evidence, in order to establish such a trust, must be clear, full, and satisfactory. *Whitley et al.* v. *Ogle*, 20 Atlantic Reporter, 284; 1 Perry on Trusts, § 137; *Page* v. *Page*, 8 N. H. 187, 196.

But although parol evidence, when offered to affect the title to real estate, should be received with caution and carefully weighed, yet, when its effect is to clearly establish a resulting trust therein, the court has no option but to declare it.

For the reasons aforesaid, we think the complainant is entitled to relief.

*Charles Bradley & Walter F. Angell*, for complainant.

*Stephen A. Cooke, Jun., & Louis L. Angell*, for respondents.